

# SUPREME COURT OF ARKANSAS

No. CV–15–1045

| | | |
|---|---|---|
| ANTONIO MARTINI | | **Opinion Delivered:** December 22, 2016 |
| | APPELLANT | |
| V. | | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [23PR-2013-441] |
| CHRISTOPHER PRICE | | |
| | APPELLEE | HONORABLE H.G. FOSTER, JUDGE |
| | | AFFIRMED IN PART; REVERSED AND DISMISSED IN PART; COURT OF APPEALS OPINION VACATED. |

**ROBIN F. WYNNE, Associate Justice**

Antonio Martini appeals from a final decree of adoption granting an adoption petition filed by his ex-wife's current spouse, Christopher Price, in which Price sought to adopt Martini's daughter and former stepson without Martini's consent. The Faulkner County Circuit Court found that appellant's consent to the adoptions was not necessary because he had failed for a period of at least one year without justifiable cause to communicate with the children. Appellant argues that the circuit court erred by finding that his consent was not necessary and by finding that it was in his former stepson's best interest to be adopted by his ex-wife's current spouse. We accepted this case on a petition for review of a decision by our court of appeals, wherein the court of appeals affirmed the decree by a vote of 5-4. Thus, our jurisdiction lies pursuant to Rule 1-2(e) of the Rules of the Arkansas Supreme Court and Court of Appeals. We affirm as to appellant's former stepson and reverse and dismiss as to appellant's daughter.

Appellant's former stepson, G.L. was born to Renita Lemmonds (now Price), in 2004. No father is listed on the birth certificate. Appellant entered the lives of G.L. and Mrs. Price when G.L. was eleven months old. Appellant and Mrs. Price married in 2006 and had a daughter, E.M., in 2007. In December 2009, while the family was living in Washington State, appellant was arrested following an incident of domestic violence against Mrs. Price. Mrs. Price immediately left Washington with the children, came to Arkansas where her mother lived and where the couple had lived previously, and obtained an order of protection barring appellant from having either direct or indirect contact with her for one year. Appellant pled guilty to domestic-violence-related charges in March 2010, for which he received a two-year suspended sentence and was ordered to enter a domestic-violence treatment program. A second order of protection was entered that barred appellant from contact with Mrs. Price until March 25, 2012. Neither of the orders of protection barred appellant from contact with the children.

In 2012, Mrs. Price filed a complaint for divorce against appellant. A decree of divorce was entered on October 26, 2012. The decree grants custody of E.M. to Mrs. Price, with appellant being awarded reasonable privileges of visitation. The decree also states that appellant had acted in loco parentis to G.L. and that appellant would have reasonable visitation with him as well. Pursuant to the decree, visitation was to be "graduated initially" and supervised by the children's therapist. After six months, the parties were to review their progress and determine a more permanent visitation schedule according to the recommendation of the therapist. Appellant had two supervised visits with the children in 2012 consisting of one in November and another in December. He attended

three family-therapy sessions with Mrs. Price and the children in 2013 on January 16, February 5, and March 26. After the March 2013 visit, the therapist stated in a report that she did not believe that additional family sessions would be in the children's best interest due to appellant's behavior during the sessions.

Mrs. Price married appellee in July 2013. On November 6, 2013, appellee filed an amended petition for adoption of G.L. and E.M.[1] The petition alleges that appellant's consent to the adoptions is not required because appellant failed for a period of at least one year without justifiable cause to communicate with the children. Appellant objected to the adoptions, asserting that there existed justifiable cause for any lack of communication with the children.

At the hearing on the adoption petition, there was testimony that Mrs. Price created an email account for the children and provided the email address to appellant. Appellant emailed the children three times in the fall of 2010: twice in response to emails from the children and once to wish E.M. a happy birthday. Appellant testified that he ceased emailing the children after Mrs. Price apparently had a heated exchange with members of the probation office supervising appellant, which led to concern by appellant that she was using the email account to attempt to set him up. Appellant was never notified that Mrs. Price had taken the children to Arkansas, nor was he made aware of where Mrs. Price and the children were living. Mrs. Price also provided appellant with a phone number for his domestic-violence counselor to call regarding visitation with the children and to which no call was made. Mrs. Price also sent him correspondence through the mail in 2010 that had

---

[1] Appellee had filed a petition on August 20, 2013, that referenced only E.M.

the address of the Arkansas Department of Human Services office where she worked listed as the return address. However, appellant testified that he thought the office acted as a go-between and had no way of knowing that Mrs. Price worked there. Appellant looked into setting up visitation with the children over Skype but was informed by both an attorney and his probation officer that this posed a risk of violating the no-contact order. Following the hearing, the circuit court entered a decree in which it found that appellant's consent to the adoptions was not necessary and granted the amended petition. This appeal followed.

We review probate proceedings de novo, but we will not reverse the decision of the probate court unless it is clearly erroneous. *Dillard v. Nix*, 345 Ark. 215, 45 S.W.3d 359 (2001). A finding is clearly erroneous when, despite evidence to support it, we are left on the evidence with the firm conviction that a mistake has been committed. *Morningstar v. Bush*, 2011 Ark. 350, 383 S.W.3d 840. When reviewing the proceedings, we give due regard to the opportunity and superior position of the probate judge to determine the credibility of the witnesses. *Id.*

Appellant first argues that the circuit court erred in finding that his consent to the adoptions was not required. Consent to adoption is not required of a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree. Ark. Code Ann. § 9-9-207 (Repl. 2009). Adoption statutes are strictly construed, and a person who wishes to adopt a child without the consent of the parent must prove that consent is unnecessary by clear and convincing evidence. *In re Adoption of Lybrand*, 329 Ark. 163, 946 S.W.2d 946 (1997). A

"failure to communicate without justifiable cause" is one that is "voluntary, willful, arbitrary, and without adequate excuse." *Id*. at 169-70 (quoting *In re K.F.H. & K.F.H.*, 311 Ark. 416, 421, 844 S.W.2d 343, 346 (1993)). The issue of whether justifiable cause existed is factual and turns largely on the credibility of the witnesses. *Id*. It is not required that a parent fail totally in his or her obligations in order to fail "significantly" within the meaning of the statute. *Id*. Moreover, the one-year period may be any one-year period, not necessarily the one immediately preceding the filing of the adoption petition. *Id*.

We hold that the circuit court's finding that appellant's consent was not required for appellee to adopt E.M. is clearly erroneous. Appellant contended before the circuit court that the orders of protection hindered him from having contact with the children. Appellant was subject to two orders of protection that barred him from "any contact whatsoever, in person or through others, by phone, mail, or any means, directly or indirectly" with Mrs. Price until March 2012. While the orders of protection were in effect, the children were too young to initiate contact with appellant on their own. All contact between appellant and the children would, in some fashion, have to go through Mrs. Price. Given that the orders of protection barred indirect contact by any means with Mrs. Price, it was reasonable for appellant to be concerned that even contact aimed at facilitating contact with the children could constitute a violation of the protective order that would expose him to a period of incarceration. Appellant contacted the children over email, but Mrs. Price's confrontational phone conversations with the probation office induced him to cease that activity. Appellant inquired into video-phone visitation with the children over Skype, but was advised that this ran a risk of violating the protective order.

There is also no indication that appellant knew where the children were located prior to Mrs. Price filing for divorce. Once the divorce decree was entered, and appellant was allowed visitation with the children, he exercised that visitation to the fullest extent he was allowed, although he lived out of state and his attendance at the visits required extensive travel on his part.[2] Although we have held previously that the one-year period referenced in section 9-9-207 can be any one-year period and is not required to be the one-year period immediately preceding the filing of the adoption petition, we believe that circuit courts should consider the parent's conduct, particularly in the period before the filing of the petition, in determining whether the parent's consent to an adoption should be required.

The obstacles to appellant's communication with the children prior to March 2012 were precipitated by a domestic disturbance, but obstacles they remained. Once those obstacles were removed, appellant took as much action to have contact with the children as he could under the divorce decree, lending credence to a conclusion that the earlier lack of contact was a result of the no-contact order.[3] Despite appellant's efforts to visit the children and reestablish his relationship with them, the children's therapist recommended that his visitation with the children cease[4] and the period during which the obstacles were in place

---

[2] When visitation commenced, appellant lived in Katy, Texas. He subsequently moved to Wichita, Kansas.

[3] We note that the decree gives no indication that the circuit court found appellant's testimony at the hearing on the petition not to be credible.

[4] The issue of appellant's visitation with the children is not before us. Accordingly, nothing in this opinion should be taken as a comment on whether appellant should be allowed visitation under the divorce decree. Here, we are concerned only with the decree of adoption.

was then used to permanently terminate his relationship with his biological child. Under these facts, the termination of his relationship with his child without his consent was not warranted. The portion of the circuit court's order finding that appellant's consent to the adoption of E.M. was not required and granting appellee's petition to adopt E.M. is hereby reversed and dismissed.

Appellant also challenges the granting of appellee's petition to adopt G.L. Appellant is not G.L.'s parent. Although the divorce decree states that appellant acted in loco parentis to G.L., the consent of one acting in loco parentis is not required under section 9-9-207. As such, appellant has no right to withhold consent to G.L.'s adoption. Appellant contends that the circuit court erred in failing to consider whether the adoption of G.L. by appellee would be in G.L.'s best interest if the adoption of E.M. were to be reversed. There is no indication from the record that the status of E.M.'s adoption has any bearing on G.L.'s best interest. Appellant complains that the children will have two different fathers with parental rights and obligations. However, he did not adopt G.L. while he was married to Mrs. Price and cannot be heard to complain now that her current spouse wishes to do so. The circuit court's finding that adoption by appellee is in G.L.'s best interest is not clearly erroneous and is affirmed.

Affirmed in part; reversed and dismissed in part; court of appeals opinion vacated.

GOODSON, J., dissents.


**COURTNEY HUDSON GOODSON, Justice, concurring in part and dissenting in part.** I agree with the majority's rejection of Antonio's argument with respect to G.L.

However, the proper application of our standard of review requires an affirmance of the circuit court's finding that Antonio's consent to the adoption is not required because he failed significantly and without justifiable cause to communicate with his daughter E.M. Therefore, I respectfully dissent from the majority's reversal on this point.

Arkansas Code Annotated section 9-9-207(a)(2)(i) (Repl. 2015) provides that "[c]onsent to adoption is not required of a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause to communicate with the child." It is not required that a parent fail "totally" in these obligations in order to fail "significantly" within the meaning of the statute. *Lucas v. Jones*, 2012 Ark. 365, 423 S.W.3d 580. It denotes a failure that is meaningful or important. *Racine v. Nelson*, 2011 Ark. 50, 378 S.W.3d 93.

A circuit court's finding that consent is unnecessary because of a failure to support or communicate with the child will not be reversed unless clearly erroneous. *In re Adoption of A.M.C.*, 368 Ark. 369, 246 S.W.3d 426 (2007). "We view the issue of justifiable cause as factual but one that largely is determined on the basis of the credibility of the witnesses. This court gives great weight to a trial judge's personal observations when the welfare of young children is involved." *In re Adoption of Lybrand*, 329 Ark. 163, 169, 946 S.W.2d 946, 950 (1997) (quoting *In re K.F.H.*, 311 Ark. 416, 423, 844 S.W.2d 343, 347 (1993)). Further, we have stated repeatedly that the circuit court is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. *In re Adoption of M.K.C.*, 2009 Ark. 114, 313 S.W.3d 513.

In this case, it is undisputed that Antonio did not see the children at all between December 2009 when he and Renita Price separated, and October 2012 when they were divorced. During this near three-year period, Antonio sent the children a grand total of three short emails in August and September 2010 after Renita twice invited him to establish contact with them and only after the children had emailed him. Thus, the question is whether Antonio's significant failure to communicate with the children is justified. On appeal, Antonio contends that his failure to establish contact with the children is excused because he was laboring under a no-contact order and because he did not know where the children were located.

The protective order prohibited Antonio from having any contact with Renita, but the order did not cover the children. The record reflects that Renita provided Antonio with an email address so that he could communicate with the children in August 2010. He also received a letter in August 2010 with a return address of a local office of the Arkansas Department of Human Services, and Antonio admitted that he thought that the agency acted as a "go-between" for communication. Renita also provided Antonio a phone number for his counselor to call for the purpose of setting up visitation with the children. Thus, the evidence demonstrates that Antonio was able to establish contact with the children without violating the no-contact order. However, other than the three emails, he did not avail himself of those opportunities.

In holding that Antonio's failure to communicate with the children is excused based on the existence of the protective order, the majority shares Antonio's skepticism of Renita's overtures asking him to reach out to the children and his notion that she was "setting him

up." It also accepts at face value Antonio's testimony that his fears were corroborated by confrontational phone calls that Antonio alleged Renita had made to probation officers. However, the circuit court was not required to believe Antonio's assertion that he thought he was being set up or that the alleged phone calls even took place. On this point, the circuit court also heard the testimony of Renita. She testified that she reached out to Antonio, extended an olive branch to him, and did everything in her power to help him establish a healthy and meaningful relationship with the children. Renita also read aloud to the court the August 2010 letter she had written to Antonio updating him on the progress of the children; informing him that the children often asked about him and that they missed him and loved him; stating her belief that it would be good for the children to communicate with him; and inviting him to begin talking to them on a regular basis by phone, email, or Skype. Renita also stated in the letter that "I just want our children to know they have two parents who have – who love them both very much. The current No Contact Order bars you from contacting me. It does not prohibit me from contacting you or prevent you from talking to our children." Further, in her testimony, Renita stated that she had received advice from attorneys that Antonio had a right to hire an attorney to establish visitation because he retained parental rights, and she noted that his defense counsel in Washington had contacted her on Antonio's behalf. The circuit court was in a far superior position to assess Renita's motives for seeking to initiate contact between Antonio and the children and could reject Antonio's alleged belief that he was being set up.

In addition, the majority gives full credence to Antonio's testimony that he consulted an attorney and his probation officer about establishing visitation over Skype and "was

advised that this ran a risk of violating the protective order." Once again, the circuit court could discount the testimony that this was the advice he received. Instead, the circuit court could accept, and obviously did find credible, Antonio's testimony that his probation officer told him that he would not be in violation of the protective order if he kept the conversation with the children about the children. This testimony, as well as Renita's testimony on this subject, certainly casts doubt on Antonio's claim that the no-contact order prevented him from communicating with the children.

Applying the proper standard of review, it cannot be said that the circuit court's finding is clearly erroneous. In such matters we must defer to the apparent credibility determinations made by the circuit court. The majority falls into error by ignoring our standards and reaches its result by according more credence to Antonio's testimony than it was given by the circuit court. The protective order did not prohibit Antonio from contacting the children. He had addresses where he could have sent cards or messages to them. Antonio had the ability to hire an attorney to establish visitation without violating the protective order. As Renita offered, he could have utilized his counselor to arrange visits with the children. I would affirm the circuit court's ruling that the no-contact order did not justify his failure to communicate with the children for almost three years.

I also take issue with the majority's finding that Renita's decision to withhold her precise location from Antonio hindered his ability to maintain contact with the children. This conclusion wholly disregards the evidence presented at the hearing. The record reveals that Antonio and Renita married in Arkansas and lived here following the wedding. Renita testified that her mother had lived in the same home in Arkansas for twenty-five years, and

she estimated that they had visited her twenty or more times during their marriage. It is also significant that Antonio received a letter with a return address of a local agency in Arkansas. On this record, Antonio's claim that he had no way of knowing the children's whereabouts is simply untenable. From the information available to Antonio pointing to a location in Arkansas and the open line of communication extended by Renita as discussed in the first point, the circuit court could easily dismiss Antonio's contention that not knowing the children's precise location prevented him from communicating with them. Because the circuit court's finding is not clearly erroneous, I would affirm on this point as well.

On this issue, the majority emphasizes the fact that Antonio exercised visitation following the divorce and that his post-divorce conduct should be considered in determining whether his consent to the adoption should be required. I can agree with that statement for the purposes of this appeal, as Antonio's character was on full display during his supervised visitation. After the March session, the therapist recommended that it was in the children's best interest to discontinue Antonio's visits with the children because of his behavior. According to the therapist's notes, Antonio was confrontational with Renita during the sessions which upset the children, who remembered the incidents of domestic abuse perpetrated by Antonio against Renita. E.M. expressed fear of Antonio and stated that she did not wish to visit him at his house. In one session, Antonio accused Renita of kidnapping the children. On another occasion, E.M. innocently mentioned Price, and Antonio told the children that Price could not be their father because he was married to someone else. When the therapist advised Antonio that his comment was not appropriate,

Antonio responded by saying, "This is my time with the children and I can say anything I want." This caused G.L. to begin banging his head on the table. The therapist commented that Antonio was antagonistic and that his statements were not uplifting, not encouraging, and not appropriate in front of the children. Following one visitation, Antonio confronted the therapist in the parking lot as she was walking to her car. She stated that his actions were "threatening and intimidating." The therapist also advised that Antonio should seek help from another counselor to deal with his issues.

What is most disturbing about the majority's opinion is that Antonio is portrayed as a victim. The majority blames the no-contact order and Renita's decision to remove herself and the children from an atmosphere of abuse to excuse Antonio's failure to communicate with the children over a three-year period. The moral of the opinion is that one may commit acts of domestic abuse for which a protective order is necessary, and yet gain exoneration for not contacting one's children without lifting a finger to take advantage of offers to establish communication or to pursue other reasonable means to maintain contact with the children which do not involve the violation of the no-contact order. The message sent by this opinion is beyond disappointing. Antonio is not a blameless victim. He was not without recourse to initiate contact with the children. Any obstacles Antonio faced were not insurmountable. The circuit court's decision should be affirmed.

*Tripcony, May & Assoc.*, by: *James L. Tripcony*, for appellant.

*Kamps & Stotts, PLLC*, by: *Adrienne M. Griffis*, for appellee.