Cite as 2020 Ark. 51

# SUPREME COURT OF ARKANSAS

**No.** CV–19–416

|  |  |
|---|---|
| | **Opinion Delivered:** February 6, 2020 |
| LANINA WATSON, INDIVIDUALLY AND AS A REPRESENTATIVE OF A CLASS OF PERSONS SIMILARLY SITUATED | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. 47BCV-12-283] |
| APPELLANT | HONORABLE TONYA ALEXANDER, JUDGE |
| V. | |
| CITY OF BLYTHEVILLE, ARKANSAS AND ITS SEWER DEPARTMENT | AFFIRMED. |
| APPELLEE | |

**JOHN DAN KEMP, Chief Justice**

Lanina Watson, individually and as a representative of a class of persons similarly situated, appeals the dismissal of her illegal–exaction suit against the City of Blytheville and its Sewer Department ("City"). For reversal, Watson argues that the circuit court erred in rejecting her claim that a $5 fee for sewer-system repairs and upgrades, imposed pursuant to a city ordinance, was a tax and constituted an illegal exaction in violation of the Arkansas Constitution. We affirm.

I. *Facts*

On August 6, 2008, the City entered into a Consent Administrative Order ("CAO") with the Arkansas Department of Environmental Quality ("ADEQ") in which ADEQ

found many National Pollutant Discharge Elimination System Program ("NPDES") permit violations at the City's three wastewater-treatment facilities. ADEQ mandated numerous repairs and upgrades to the City's sewer system. Failure to comply with the improvements required by ADEQ would subject the City to severe financial penalties and "any other remedies or sanctions which may be available to ADEQ[.]" The City's projections indicated that the cost of the improvements would be approximately $2,500,000.

On January 19, 2010, the City passed Ordinance 1701 to raise the funds necessary to comply with the CAO. Ordinance 1701 stated,

> AN ORDINANCE TO AMEND ORDINANCE NO. 1686 SETTING THE RATES FOR BLYTHEVILLE WASTEWATER SYSTEM, DECLARING AN EMERGENCY, AND FOR OTHER PURPOSES.
>
> WHEREAS, the City Council of Blytheville, Arkansas passed Ordinance No. 1686 setting the rates of the Blytheville Wastewater System, and
>
> WHEREAS, it has been brought to the attention of the City Council of Blytheville that certain changes to this Ordinance are necessary due to revenue shortfall, and
>
> WHEREAS, the City Council of the City of Blytheville, Arkansas recognizes the need to collect additional funds to meet the ADEQ Milestone Schedule for the repairs to the Blytheville Wastewater System, and
>
> WHEREAS, the City of Blytheville has exhausted all other sources of revenue.
>
> NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF BLYTHEVILLE, ARKANSAS THAT ORDINANCE NO. 1686 BE AMENDED AS FOLLOWS:
>
> > SECTION I. A five dollar ($5.00) charge will be levied each month per user for a period not to exceed five years, which shall be an additional charge on each monthly statement for water and other services.

SECTION II. This amendment will automatically sunset at the end of five (5) years from its passage if not terminated sooner by the City Council.

SECTION III. All other provisions of Ordinance No. 1686 will remain in full force and effect except as amended herein.

SECTION IV. It being hereby found and determined by the City Council that in order to insure the safety and welfare of the city and persons affected hereby and to comply with the ADEQ requirements, an emergency is hereby declared to exist and this Ordinance shall take effect and be in force from and after its publication.

Blytheville, Ark., Ordinance 1701 (Jan. 19, 2010). The project, which included the $5 monthly fee, those funds collected, and any repairs and updates pursuant to the CAO, were referred to as the "Milestone Study."

Realizing that the $5 monthly fee would not provide the funds necessary to complete the repairs, Blytheville Mayor James Sanders approached ADEQ with the difficulties that the City faced in funding the Milestone Study. Through negotiations with ADEQ, the City reduced the repair requirements so that $1,500,000 would be required for compliance with the CAO. Although Ordinance 1701 contained a sunset provision that automatically terminated the $5 fee after five years, the City determined that the goals of the fee were met in February 2014. As a result, on February 18, 2014, the Blytheville city council enacted Ordinance 1758, which repealed Ordinance 1701. The City exceeded its goal by $7,971, raising a total of $1,507,971.

On December 5, 2012, Watson filed a class-action complaint against the City, and she filed an amended complaint on January 17, 2014, alleging that the $5 monthly fee constituted an illegal exaction in violation of article 16, section 13 of the Arkansas Constitution. She alleged that the revenue shortfall in Ordinance 1701 "was due to the City

3

of Blytheville using its general fund revenue to maintain and upkeep a city owned golf course, making donations to civic organizations, and mismanaging city funds, all while neglecting to upgrade, maintain, and service the city-wide sewer system." She alleged that the ordinance was passed for the sole purpose of increasing general revenue, that the fee was being used to maintain traditional government functions, and that it did not bear a "rational relationship to the costs and expenses the sewer department actually incurs" or to customer usage. Watson claimed the fee was a tax and sought a declaratory judgment that the fee was an illegal exaction, damages in the amount of all money collected prior to and during the pendency of the litigation, and an accounting. She argued alternatively that, if the circuit court determined that the $5 fee was not an illegal exaction, any amount collected in excess of $1,500,000 should have been refunded.

On May 5, 2015, the City moved for summary judgment, arguing that Watson failed to state a legal basis for her assertion that the fee constituted an illegal exaction or that she was entitled to an accounting of the funds obtained pursuant to the ordinance. The City attached affidavits from Melissa Beth Connell, the finance clerk for the Blytheville Sewer Department, and Mayor Sanders, as well as an Affidavit and Expert Opinion of Dan V. Jackson. In her affidavit, Connell attested that

> [t]he $5 fee established by City of Blytheville Ordinance 1701 is referred to as the "Milestone Study." It was separately accounted for in all of the accounting documents for the City of Blytheville Sewer Department. Two items were included in the accounting for the Sewer Department related to the Milestone Study. Item number 399 in the monthly budget was labeled "Revenue Milestone Study," and item number 695 was labeled "Expenditures Milestone Study." The City of Blytheville also maintains audited reports detailing all of its financial expenditures for each prior fiscal year.

4

Additionally, both Connell and Mayor Sanders attested that Milestone Study funds were designated for improvements to the sewer system required by the CAO and "[r]evenue collected from the Milestone Study was only used to fund improvements to the City of Blytheville's sewer system." The City's expert, Dan V. Jackson, stated that in recent years, the City's sewer department had experienced severe financial distress; the adoption of the $5 fee represented reasonable and prudent utility financial management; the fee was directly related to the funding requirements of the CAO and was used for no other purpose; the fee was only assessed to those who actually use the City's sewer service; and that "under generally accepted ratemaking principles the fee can be considered to be just, reasonable and appropriate." Ultimately, Jackson opined that the fee "confers a benefit to those receiving the service by enabling the City to fund its state-mandated obligations, which will improve both the environment and the quality of sewer service[,]" and that the fee was not a tax.

Watson filed a countermotion for partial summary judgment and attached portions of depositions from City board members, Mayor Sanders, and the head of the Sewer Department, as well as several documents, including a statement of revenue and expenses, Ordinance 1701, the CAO, and a "Milestone Schedule."

The circuit court conducted a hearing on February 6, 2019, and ruled the $5 fee was not a tax. That same day, the circuit court entered an order granting the City's summary-judgment motion and dismissing all of Watson's claims with prejudice. Watson timely appealed the dismissal of her lawsuit.

II. *Illegal Exaction*

On appeal, Watson argues that, despite its designation, the exaction in this case is a tax instead of a fee. Specifically, she argues that contrary to the language of the ordinance, the $5 fee was unnecessary because the Sewer Department operated with a cash-flow surplus through 2012, that the fee was not fair and reasonable, and that the funds collected from the $5 fee were deposited into general revenue accounts and were used for purposes other than the Milestone Study.

Generally, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *See Hobbs v. Jones*, 2012 Ark. 293, at 7–8, 412 S.W.3d 844, 850. But when the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.* at 8, 412 S.W.3d at 850. When the parties file cross-motions for summary judgment, as in this case, we determine on review whether the appellee was entitled to judgment as a matter of law. *See Sullins v. Cent. Ark. Water*, 2015 Ark. 29, at 3–4, 454 S.W.3d 727, 730. Thus, our review is de novo. *See Hobbs*, 2012 Ark. 293, at 8, 412 S.W.3d at 850.

Under article 16, section 13 of the Arkansas Constitution, "[a]ny citizen of any county, city or town may institute suit, in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." An illegal exaction is any exaction that is either not authorized by law or is contrary to law. *Robinson v. Villines*, 2009 Ark. 632, at 6, 362 S.W.3d 870, 874. Two types of illegal-exaction cases can arise under article 16, section 13: "public funds" cases, where the plaintiff contends

6

that public funds generated from tax dollars are being misapplied or illegally spent, and "illegal-tax" cases, where the plaintiff asserts that the tax itself is illegal. *McGhee v. Ark. State Bd. of Collection Agencies*, 360 Ark. 363, 370, 201 S.W.3d 375, 379 (2005).

To bring an illegal–exaction claim based on an "illegal tax," the exaction must be a tax and not a fee. *Morningstar v. Bush*, 2011 Ark. 350, at 6–7, 383 S.W.3d 840, 845. Although a city can assess a fee for providing a service without obtaining public approval, a tax cannot be levied without taxpayer approval. *See* Ark. Code Ann. § 26-73-103(a)(2) (Repl. 2008). The court is not bound by a city's calling an exaction a "fee" and not a "tax." *Harris v. City of Little Rock*, 344 Ark. 95, 105, 40 S.W.3d 214, 221 (2001). We look to the true nature of the exaction rather than its name to make that determination. *Id.*, 40 S.W.3d at 221. A government imposes a tax for general revenue purposes, but it imposes a fee in the exercise of its police powers. *Id.*, 40 S.W.3d at 221. A governmental levy of a fee, in order not to be denominated a tax by the courts, also must be fair and reasonable and bear a reasonable relationship to the benefits conferred on those receiving the services. *Id.*, 40 S.W.3d at 221. Additionally, ordinances are entitled to the same presumption of validity as legislative enactments. *Morningstar*, 2011 Ark. 350, at 7, 383 S.W.3d at 845.

We previously have addressed the issue of whether an exaction is a fee or a tax. In *Harris*, the City of Little Rock increased user fees at recreational facilities that would be used to repay revenue bonds sold to fund park and recreational improvements. 344 Ark. at 98, 40 S.W.3d at 216. There, in determining that the fee was not a tax, the chancellor found that only those who directly benefited from the park services were required to pay the fee, that the funds secured by the fees would only be used for the improvement of the parks,

that the fees would be deposited into a separate fund rather than the city's general revenues, and that the increases were fair and reasonable. *Id*. at 105–06, 40 S.W.3d at 221–22. This court affirmed the chancellor's ruling that the fee was not a tax.

Similarly, in *Morningstar*, the Hot Springs Board of Directors adopted an ordinance establishing a stormwater utility fund to meet the mandates resulting from an NPDES permit and imposing a monthly fee on corporate and residential utility accounts within the city limits. 2011 Ark. 350, at 2–3, 383 S.W.3d at 842–43. There, the circuit court ruled that the exaction was a fee instead of a tax. This court agreed and held that the city's expert testified that the fee was reasonable in light of the fees other cities in the region charge for similar stormwater services, that the city properly segregated the fund for use only for the purposes for which it was created, and that the scope of the services was within the purposes of the authorizing legislation. *Id*., 383 S.W.3d at 846. *Cf. City of North Little Rock v. Graham*, 278 Ark. 547, 549, 647 S.W.2d 452, 453 (1983) (holding that a "public safety fee" added to customers' water bills for the purpose of increasing the salaries of policemen and firemen was a tax because it was for the cost of maintaining a traditional governmental function of police and fire protection and not for a special service).

In the present case, we agree with the circuit court that the fee was not an illegal exaction. Like the circumstances in *Harris* and *Morningstar*, only those persons who directly benefited from the City's sewer services were required to pay the fee, and the funds collected were accounted for separately and used only for their designated purpose. Watson has not presented proof to support her assertion that the funds collected from the $5 fee went to pay for a golf course or maintain traditional government functions of the City. Again,

according to Connell, all funds generated by the Milestone fee were accounted for separately. She and Mayor Sanders attested that Milestone Study funds were designated for use for improvements to the sewer system required by the CAO and that revenue from the Milestone Study was only used to fund improvements to the City's sewer system. Additionally, Jackson opined that the Milestone fee was "fair and equitable" in that it conferred a benefit on ratepayers by enabling the City to fund its state-mandated obligations and, in turn, provide them with a properly functioning sewer system.

We are likewise not persuaded by Watson's argument that, contrary to the language of Ordinance 1701, the $5 fee was unnecessary because, not considering depreciation expenses, the Sewer Department operated with a cash-flow surplus through 2012. Jackson opined that the City's sewer department had been experiencing severe financial distress, that the City had no choice but to implement some form of sewer-rate adjustment to provide the revenue required to fund the Milestone repairs, and that the City's adoption of the $5 fee represented reasonable and prudent utility financial management.

Further, we do not consider the $7,971 collected in excess $1,500,000 to be an illegal exaction. We have previously rejected the argument that simply because a utility fee generates a surplus in a utility fund, the exaction must be a tax. *See Morningstar*, 2011 Ark. 350, at 9, 383 S.W.3d at 846. In this instance, Watson has failed to show that the excess $7,971 was used for anything other than Milestone Study repairs.

Thus, we hold as a matter of law that the $5 monthly fee was not a tax and, therefore, not an illegal exaction. Accordingly, we conclude that the circuit court properly granted summary judgment, and we affirm.

Affirmed.

*Law Office of Harris & Morrison*, by: *James W. Harris* and *Zachary Morrison*, for appellant.

*M. Keith Wren*, for appellee.