Cite as 2023 Ark. 53

# SUPREME COURT OF ARKANSAS

No. CV-21-198

| | |
|---|---|
| TERESA JAMES | **Opinion Delivered:** March 16, 2023 |
| APPELLANT | APPEAL FROM THE OUACHITA COUNTY CIRCUIT COURT [NO. 52CV-18-154] |
| V. | |
| MARY CYNTHIA MOUNTS, JAMES PHILLIP ROCCONI, AND RICHARD ANTHONY ROCCONI, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF JAMES R. ROCCONI, DECEASED | HONORABLE DAVID F. GUTHRIE, JUDGE |
| | AFFIRMED; COURT OF APPEALS OPINION VACATED. |
| APPELLEES | |

**BARBARA W. WEBB, Justice**

Teresa James, the ex-wife of Dr. James R. Rocconi, deceased, appeals from a declaratory judgment by the Ouachita County Circuit Court finding that the death benefit of a term life-insurance policy owned by Dr. Rocconi was payable to his children and not to her. On appeal, James argues that the circuit court erred in (1) failing to make findings of fact and conclusions of law in accordance with Rule 52 of the Arkansas Rules of Civil Procedure;[1] (2) finding that Dr. Rocconi substantially complied with the Allianz policy requirements to change a beneficiary designation with an unsigned, undated change-of-beneficiary form; (3) finding the Allianz policy provisions regarding the change-in-

---

[1]Point 1 appears in James's original brief but is not mentioned in her "supplemental" briefing. Her original Point 2, "The circuit court erred in finding that a change of beneficiary had occurred in accordance with Arkansas law" restated and expanded in new Points 2, 3, and 4, so the original Point 2 will not be discussed separately.

beneficiary designation to be ambiguous; and (4) construing the unsigned, undated change-of-beneficiary form to effect a change in beneficiary.

The court of appeals reversed and remanded. *See James v. Mounts*, 2022 Ark. App. 158, 644 S.W.3d 425. We granted the appellees' petition for review. When we review a decision by the court of appeals, we treat the case as though it had been originally filed in this court. *Cherry v. Cherry*, 2021 Ark. 49, 617 S.W.3d 692. We vacate the court of appeals opinion and affirm.

## I. *Facts*

On September 5, 2016, Teresa James informed Dr. Rocconi, her husband of thirteen years, that she was leaving him. Three days later, James filed for divorce. The divorce was finalized April 18, 2017. Almost immediately after James informed him of her decision, Dr. Rocconi began to take inventory of his assets to ensure that James would receive nothing from his estate in the event of his death. On September 9, 2016, Dr. Rocconi changed his will to bequeath all his assets to his three adult children, Mary Mounts, Richard Rocconi, and James P. Rocconi.

It is not disputed that on October 17, 2016, Dr. Rocconi called Allianz Insurance Company to determine what, if any, insurance policies he had with Allianz and to ensure that if his wife was a named beneficiary, she was replaced with his three adult children. The Allianz representative informed him that he had a $300,000 term–life policy.

The life-insurance policy allowed the policy owner to change beneficiaries. The policy documents included the following language:

Change of Beneficiary      You may change the named Beneficiary by sending Notice. The change will not be effective until we record it at our home office. Even if the insured is not living when we record the change, the change will take effect retroactively as of the date it was signed. Any benefits we pay before we record the change will not be affected. An irrevocable Beneficiary must give written consent before we will change the Beneficiary.

The policy defines the "Beneficiary" as "the person(s) or entity named in the application unless changed as outlined in the Change of Beneficiary provision." Under the policy, "Notice" is defined as "[o]ur receipt of a satisfactory written request."

Dr. Rocconi asked for, and received from Allianz via fax, the change-of-beneficiary form that Allianz required. The form he received was styled "Request to Transfer Ownership and/or Change Beneficiaries." Under the style, the form stated simply, "The owner should use this form to transfer ownership of an annuity or life insurance policy and/or to add or change beneficiaries."

Section 1 of the five-page form requested contract information: the policy number, owner's name, social security number, phone numbers, and email address. Section 2 of the form concerned changing policy owners. Section 3 addressed "Beneficiary designation." The instructions provide:

Complete this section to add or change beneficiaries.

- Percentages must total 100%.

- If you have more than 4 beneficiaries, please list them on a separate sheet, signed and dated by you.

- If you do not indicate the % you would like each beneficiary to receive, the surviving beneficiaries will share equally.

Standard blocks for completing identifying information for Beneficiary Nos. 1–3 are listed on page 3. A standard block for completing identifying information for Beneficiary No. 4 is listed on page 4. Directly below the space to designate Beneficiary No. 4 are the following directives:

> As the authorized signer, please sign your name and date below in the appropriate space. If you do not sign and date this page, we will not be able to process your request.

> Changes will take affect based on the guidelines in your contract. Allianz is not liable for any requested changes we make to your contract before the effective date.

Below these directives were signature blocks for the current owner; current joint owner; new owner; new joint owner; trustee, attorney in fact; and assignee.

Dr. Rocconi filled in the information required to complete the above-referenced Section 3 on the form, listing his three adult children, the same beneficiaries named in his new will, as the new policy beneficiaries, with each receiving 33 1/3 percent of the death benefit. Dr. Rocconi did not fill out any of the remaining blocks.

It was stipulated by the parties that Sections 1, 2, and 3 of the form were completed by Dr. Rocconi in his handwriting. Dr. Rocconi's handwritten form was faxed back to Allianz at 3:50 p.m. the same afternoon that he received the form from Allianz. Allianz records indicate that a letter was subsequently generated and mailed to Dr. Rocconi on October 19, 2016, indicating that his beneficiary-change request was incomplete because it was not signed and dated.

On November 24, 2017, Dr. Rocconi passed away. James completed the "Life Claim Form" Allianz sent to her to receive payment of the life-insurance death benefit, but before

payment was made, appellees, Dr. Rocconi's children and the executor of his estate, filed a declaratory-judgment action asking the circuit court to find that they were the lawful beneficiaries of the life-insurance policy. Alternatively, appellees asked the circuit court to find that the policy language regarding the change of a beneficiary is ambiguous and must be interpreted in their favor. James counterclaimed, seeking, among other things, a declaratory judgment from the circuit court that the policy provided for payment of the death benefit to her, as named beneficiary, to the exclusion of the appellees.

A bench trial was held on December 14, 2020. According to Allianz's records, Dr. Rocconi never responded to the letter asking him to correct what it regarded as deficiencies in the change-of-beneficiaries form. Appellees, however, countered that there was no evidence that Dr. Rocconi had ever been aware of the letter or that he had received it. To the contrary, Dr. Rocconi's daughter, Mary Mounts, testified that she found all of Dr. Rocconi's insurance papers following his death, including the handwritten change-of-beneficiary designation, but no letter from the insurance company requesting additional information to change the designated beneficiary was included among his papers. Likewise, Dr. Rocconi's divorce attorney, Christina Carr, testified that Dr. Rocconi never brought the insurance follow-up letter to her attention but that it "absolutely" was the type of document he would have brought to her office during her representation if he had received it. Attorney Carr further testified that Dr. Rocconi believed he had taken all steps necessary to change his insurance-beneficiary designation from James to his children. Dr. Rocconi's surgical assistant of nearly twenty-three years, Barbara Wolfe, also testified that Dr. Rocconi had represented to her that, with regard to life insurance, he did not want Teresa to get any

5

more money. Dr. Rocconi's son, Richard, recalled multiple phone calls from his father to get the children's Social Security numbers and information in order to change the beneficiary designations on the life-insurance policies. Likewise, Anthony Grummer, the chief of police of East Camden, who worked with Dr. Rocconi at the time that Teresa left him and was his "right hand man," testified that Dr. Rocconi had confided in him his intent to change his insurance-beneficiary designations from James to his children.

A recording of the above-referenced phone call from Dr. Rocconi to Allianz was played and entered into evidence:

| DR. ROCCONI: | Well, I'm confused. I've got several policies that people are drawing off of my account. What is my type of policy with your company? I'm not even sure. |
|---|---|
| ALLIANZ REPRESENTATIVE: | You have a 20-year term policy that was taken out in 2005. |
| DR. ROCCONI: | It's what now ma'am? |
| ALLIANZ REPRESENTATIVE: | It's a term policy. |
| DR. ROCCONI: | And how much? |
| ALLIANZ REPRESENTATIVE: | This is insuring you for the duration of 20 years. |
| DR. ROCCONI: | And it is for how much? |
| ALLIANZ REPRESENTATIVE: | It is for $300,000. |
| DR. ROCCONI: | And who is the beneficiary? The reason I am asking you this, my wife she walked in other night and said I'm leaving you. Three nights later I got divorce papers from the sheriff's office and I'm sick and trying to find out what I've got her on. I've got to get her off. |

6

| | |
|---|---|
| ALLIANZ REPRESENTATIVE: | Okay, let me take a look. Your primary beneficiary is Teresa. |
| DR. ROCCONI: | That's who left me the other day. |
| ALLIANZ REPRESENTATIVE: | Oh, I'm so sorry. |
| DR. ROCCONI: | Yeah. She could have told me that pope left the church and getting married and I wouldn't have been more shocked. |
| ALLIANZ REPRESENTATIVE: | Oh, I'm so sorry. |
| DR. ROCCONI: | I didn't know this was coming. What do I do to change that? |
| ALLIANZ REPRESENTATIVE: | It is a simple form that I can email now and fax that to you. |

A second phone call in which Dr. Rocconi called Allianz back at 2:15 p.m. to get his policy number so that he could write it on the form was also played.

On January 4, 2021, the circuit court entered a final order that contained thirty-seven findings of fact and conclusions of law. Of specific importance for the purpose of this appeal are the findings that Dr. Rocconi "substantially complied with the policy requirements for changing a beneficiary designation when he faxed the change of beneficiary designation to Allianz on October 17, 2016; there was no evidence before the court that Dr. Rocconi received the deficiency letter from Allianz informing him that he was required to sign and date the form; the "sending Notice" requirement in the policy is ambiguous and susceptible to more than one reasonable interpretation; and that the "Request to Transfer Ownership and/or Change Beneficiaries" form is ambiguous with regard to the requirement that the form be signed and dated.

7

## II. *Standard of Review*

The standard of review on appeal from a bench trial is whether the circuit court's findings of fact were clearly erroneous or clearly against the preponderance of the evidence. *Morningstar v. Bush*, 2011 Ark. 350, at 4–5, 383 S.W.3d 840, 844. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been made. *Id.* However, disputed facts and determinations of credibility are within the province of the factfinder. *Id.* A circuit court's conclusions of law are reviewed de novo on appeal. *Hickman v. Courtney*, 361 Ark. 5, 9, 203 S.W.3d 632, 635 (2005).

## III. *Arguments on Appeal*

### A. The Circuit Court Erred in Failing to Make Findings of Fact and Conclusions of Law in Accordance with Ark. R. Civ. P. 52

James first argues that the circuit court erred in failing to make findings of fact and conclusions of law that she had requested prior to the entry of the final order. She acknowledges that the circuit court did adopt and incorporate the proposed findings of fact submitted by appellees, but, citing *Powhatan Cemetery, Inc. v. Colbert*, 104 Ark. App. 290, 292 S.W.3d 302 (2009), urges us to find this practice deficient. She contends that, unlike the circuit court in *Colbert*, the circuit court in the case before us neither invited her to object nor allowed her any time to make objections. Instead, the circuit court found her request moot. We find no error.

As appellees note, the circuit court's rejection of James's Rule 52 motion was conveyed to her as follows:

The request of the Defendant is moot as it was the intent of the Court to have the precedent contain such findings and conclusions as would constitute a complete and full record of these proceedings sufficient for appellate review. Prevailing counsel has submitted such a precedent and it will be signed and entered.

Prior to James's December 22 motion, the circuit court circulated to counsel a letter opinion finding for the appellees and requesting that appellees' counsel draft a precedent. Appellees' counsel complied with the circuit court's request and copied James's counsel, by email.

Further, James' reliance on *Colbert* is misplaced. *Colbert,* a decision by our court of appeals, merely stands for the proposition that a party has no grounds for relief on appeal based on a circuit court's decision to adopt opposing counsel's proposed order if the party does not object to the proposed order. Although James asserts that she did not have the opportunity to object to appellees' proposed order, she never requested the opportunity to object or submit alternative findings despite having ample time to do so. As noted previously, appellees' transmission of the proposed precedent occurred on December 23 and the circuit court's final order was not entered until January 4. Accordingly, we hold that there is no prejudicial error in the circuit court's handling of James's Rule 52 motion.

### B. The Circuit Court Erred in Finding that Dr. Rocconi Substantially Complied with the Allianz Policy Requirements to Change Beneficiary Designation

James argues that the circuit court erred in finding that Dr. Rocconi substantially complied with the contractual requirements for changing a designated beneficiary. She asserts that the unsigned, undated form that Dr. Rocconi submitted did not constitute a change of beneficiary because it was not satisfactory to Allianz and thus was not processed or recorded by Allianz, the insurer. James notes that Allianz confirmed this fact as it sent a letter explaining that the change in beneficiary was not properly completed and that "[a] signed

and current dated request is required," and by testimony from its corporate representative at trial. She further notes that following Dr. Rocconi's death, Allianz contacted her as the "proper named beneficiary" and told her how to receive the death-benefit amount.

Further, citing *Allen v. First National Bank of Fort Smith*, 261 Ark. 230, 547 S.W.2d 118 (1977), which she contends is analogous, James argues that Dr. Rocconi, at best, only manifested an intent to change beneficiaries, which was insufficient under Arkansas law. She asserts that the *Allen* court held that to change beneficiaries, the policy holder must do "everything reasonably possible to effectuate a change in beneficiary," and, further, substantially comply with the contractual requirements in order to change a beneficiary. *Id.* at 235, 547 S.W.2d at 121. James argues that Dr. Rocconi did not do everything reasonably possible to effectuate the alleged change because he failed to comply with "the most basic requirement of merely signing and dating the Request." Further, James acknowledges that the appellees presented testimony about whether Dr. Rocconi received the follow-up letter from Allianz but asserts that the only "reliable evidence" is the fact that the letter was sent via U.S. Mail, for which, under Arkansas law, there is a presumption of receipt.

Additionally, James, again relying on *Allen*, and on *Tomaneng v. Reeves*, 180 F.2d 208, 209 (6th Cir. 1950), argues that Dr. Rocconi's phone calls did not effect a change in beneficiaries. She also claimed that certain gifts Dr. Rocconi had given her were evidence that he did not intend to remove her as a beneficiary and asserts that Richard Rocconi's signing and backdating a new "Request to Transfer Ownership and/or Change Beneficiary" to Allianz was a concession that the request Dr. Rocconi submitted was not satisfactory to Allianz and that a signature and date are required to substantially comply and change the

10

beneficiary under the policy.

We are not persuaded by these arguments. Her reliance on *Allen*, which she describes as "analogous," is clearly misplaced. *Allen* is easily distinguishable from the case at bar because the writing manifesting the policy owner's intention to change beneficiaries in *Allen* was only left with the policy owner's attorney and never actually transmitted to the insurance company. Conversely, Dr. Rocconi faxed the form supplied by Allianz back to the insurance company the same day that he received it. James's reliance on *Reeves* is similarly unavailing. As in *Allen*, the policy owner in *Reeves* did not transmit the beneficiary-change documents to the insurance company as he had done when he changed beneficiaries twice previously.

Under Arkansas law, only substantial compliance with the insurance policy's change-of-beneficiary procedures is required. *Tibbels v. Tibbels*, 232 Ark. 857, 340 S.W.2d 590 (1960). *Tibbels* defines what is meant by substantial compliance in the context of changing life-insurance beneficiaries.

In *Tibbels*, a divorced owner of a life-insurance policy wrote to the company and asked that the named beneficiary be changed from his ex-wife to his mother. The insurance company wrote back and stated,

> We are unable to act upon your recent letter because of our inability to determine the correct number of the policy to which you refer. Please furnish the following information and return this letter in the envelope provided.

*Id.* at 858, 340 S.W.2d at 591. Enclosed with the letter was a form to be completed requiring the insured to furnish additional information. *Id.* The policy owner was killed in an automobile accident before he returned the form. *Id.* The *Tibbels* court affirmed the chancery court's finding that the policy owner had effected a change in beneficiary. As in *Tibbels*, we

11

affirm the circuit court's finding that Dr. Rocconi's faxed return of the change-of-beneficiary form, filled out in his handwriting, substantially complied with the notice requirement to change beneficiaries.

We are mindful of the presumption embodied in the so-called mailbox rule. However, it is a presumption that may be rebutted. *See Stewart v. State*, 362 Ark. 400, 208 S.W.3d 768 (2005). The circuit court expressly found that this presumption had been rebutted. Therefore, we reject James's characterization as "reliable evidence."

Regarding the balance of James's argument under this point, pursuant to our standard of review, we defer to the factfinder whether to find credible James's proffered alternative explanation as to why Dr. Rocconi failed to respond to the letter generated by Allianz. Finally, we decline to consider James's argument concerning Richard Rocconi's signing and backdating a new "Request to Transfer Ownership and/or Change Beneficiary" form because this argument was not specifically ruled on by the circuit court.

## C. The Circuit Court Erred in Finding that the Allianz Policy Provisions Regarding the Change in Beneficiary Provisions are Ambiguous

For her final point, James argues that "[b]oth the policy and the change form contemplate signatures and dates in order to change a beneficiary and neither document is ambiguous in that regard. She asserts that the change form explicitly provides that if it is not signed and dated, the request will not be processed. She further argues that even if the language were considered ambiguous, courts can look beyond the four corners of the document and resort to other aids commonly employed to construe ambiguous contracts and arrive at the intention of parties. However, because we affirmed the circuit court's finding that Dr. Rocconi

12

substantially complied with Allianz's beneficiary-change requirements, it is unnecessary to address this final point.

Affirmed; court of appeals opinion vacated.

*Law Offices Shepherd & Shepherd, P.A.*, by: *Matthew J. Shepherd*, *John Thomas Shepherd*, and *William T. Hegi*, for appellant.

*Appellate Solutions, PLLC, d/b/a Riordan Law Firm*, by: *Deborah Truby Riordan*; and *Trammell Piazza Law Firm*, by: *M. Chad Trammell* and *Melody H. Piazza*, for appellees.