GISS *v*. APPLE.

5-3648                                          396 S. W. 2d 813

Opinion delivered December 13, 1965.

*Herschel H. Friday, Jr., Robert S. Lindsey, J. W. Barron,* for appellant.

*Julius C. Acchione, Leon Catlett, U. A. Gentry,* for appellee.

J. L. "Bex" Shaver, Special Associate Justice. This appeal involves the Riverdale Country Club and the efforts of its Board of Governors and Officers and a majority of the quorum of its members, to sell and exchange all of its presently owned land and facilities to Pleasant Valley, Inc., for a new location. Pleasant Valley, Inc., would also make available to Riverdale $1,150,000.00 for a Clubhouse, pro shop, youth center, tennis courts, parking areas, drives and swimming pools; the design and style of architecture to be determined by Riverdale.

Appellees, Apple et al., are stockholders of Riverdale. They filed suit against appellants, Giss et al., as the President and Board of Governors of Riverdale, to prevent the consummation of the proposed exchange, claiming the appellants lacked authority to act for the corporation. The appellants claimed full authority to act for the corporation, but counterclaimed and asked for a declaratory judgment. Trial in the Chancery Court resulted in a permanent injunction against the appellants; and this appeal ensued, in which appellants list four points:

I. The Club, itself has power to make the proposed exchange.

II. The vote taken Oct. 26, 1964, validily authorized the Board to make the exchange.

III. Under the articles of incorporation and bylaws the Board has authority independently to enter into the proposed exchange.

IV. Appellants are entitled to a declaratory judgment as prayed for.

Riverdale Country is a Corporation, having been incorporated by order of Pulaski Circuit Court on August 11, 1947, as a non-profit corporation under 64-1301 et seq., Ark. Stats. 1947.

Section 64-1306 of said Act provides: "Any such Corporation shall have power * * * to sell, lease, mort-

gage, pledge, assign, transfer or otherwise dispose of lands or real property, or any right or title therein, or improvements thereon, personal property of every class and description, for any purpose or use necessary, convenient, useful or incidental to the accomplishment of the purposes of the Corporation."

The Corporation is authorized to sue and be sued and "to do any and all things necessary, convenient, useful or incidental to the attainment of its purposes as fully and to the same extent as natural persons might or could do, as principals, agents, contractors, trustees or otherwise." (Ark. Stats. 64-1306).

The Corporation is authorized to amend its Constitution or Articles of Association by complying with Ark. Stats. 64-1304.

The Articles of Incorporation and Constitution of Riverdale Country Club stated that the Corporation shall be located in Pulaski County, Arkansas, and that its object shall be "to provide recreational facilities for its members and their families by means of a country and outdoor sports club." That its name shall be "Riverdale Country Club." Its officers shall be a President, Vice President, Secretary, and Treasurer, and a Board of Governors composed of nine members, to be elected as provided in Article III of the Constitution. The Board of Governors were to have control of the property and business of the Corporation. Amendments to the Articles could be made at any time as provided in Article VII of the Constitution.

The Articles provided that a quorum for the election of any and all officers shall consist of not less than a majority of the members in person or by proxy, and Amendments to Articles could be made at any time by a majority vote at any regular or special meeting at which a majority of the active members of the Corporation shall be present in person or by proxy.

By-Laws of the Corporation were adopted consistent with the authority granted in the Articles of Incorporation and Constitution.

On October 1, 1957, Article 6 of the Constitution was amended to provide that the Corporation should have power to borrow money and pledge and mortgage its property, upon the affirmative vote of a majority of the members having voting rights.

At a special meeting of the regular members of the Riverdale Country Club held on October 26, 1964, 260 regular members voted in favor of the motion authorizing the Board to proceed and act on the Pleasant Valley proposal and 256 regular members voted against it. At that time there were 549 regular members. Therefore, a majority of the members present in person or by proxy voted for the Pleasant Valley proposal, but a majority of the members having voting rights did not vote for the Pleasant Valley proposal.

The Constitution and By-Laws of Riverdale Country Club are silent as to the number of votes necessary to approve the Pleasant Valley proposal.

The lower Court held that the defendants had no authority under the Constitution and By-Laws of Riverdale Country Club to effectuate the proposed trade with Pleasant Valley, Inc., without proper authorization from the members of said Club, and that the vote of the members of Riverdale Country Club on October 26, 1964, at which time 47.35% of the members of said Club voted to authorize said exchange with Pleasant Valley, Inc., did not legally authorize and empower the Board of Governors of said Club to enter into an agreement with Pleasant Valley, Inc., whereby all the assets of Riverdale Club would be sold or exchanged. The lower Court, therfore, enjoined the defendants from entering into such agreement with Pleasant Valley, Inc.

It is appellant's position that a majority vote at any meeting legally called, at which a majority of the active members were present in person or by proxy, was sufficient to carry the proposal of Pleasant Valley. That this is true even though the Constitution and the By-Laws are silent as to the number of votes necessary to carry a proposal for exchange of properties. Also, that

under the Statutes, Articles of Incorporation and By-Laws, the Board of Governors has authority independently to enter into the agreement with Pleasant Valley.

It is appellees' position that the general language of the Statute giving power to the Corporation "to sell, transfer, or otherwise dispose of lands or real property," should be construed to mean that the Corporation should have power to sell its real property in the ordinary course of business; that the above power is limited in the act itself which withholds from the Corporation the right to sell, transfer or otherwise dispose of lands or real property except "for any purpose or use necessary, convenient, useful or incidental to the accomplishment of the purposes of the Corporation." That this language necessarily means that the Corporation was limited in the sale, transfer or other disposition of its real property to a purpose convenient and useful or incidental to the accomplishments of the purposes of operating Riverdale Club, where located, and this language should not be extended to permit the sale and transfer of all of the assets of the Corporation, and substitute therefore an entirely different Club, at an entirely different location to be operated under an entirely different title. Also, the rule generally here is, that in the absence of special provisions in the Charter or By-Laws, the Board of Governors may not sell all the corporate property without the unanimous consent of all of its members.

The Board of Governors of Riverdale considered all aspects of the proposed sale and exchange of properties with Pleasant Valley. It found that it would take $155,000.00 to bring Riverdale facilities up to desirable standards. That Pleasant Valley proposed to convey to Riverdale approximately 254 acres of land west of the Rodney Parham Road and near Highway #10 in exchange for its 250 acres of land and improvements located on same, and would construct to Riverdale's specification an 18 hole golf course and a 9 hole golf course; pay Riverdale $1,150,000.00 to be used by it to design and construct a Clubhouse, swimming pool and tennis court, and would pay Riverdale's present mortgage indebtedness

amounting to not more than $170,000.00. The Board had the benefit of professional appraisers and the reports of its study committees on all aspects of the proposed transaction. It unanimously approved the proposed transaction and a majority of a quorum of the members approved same.

The Constitution of Riverdale requires that the recreational facilities be in Pulaski County. There is nothing in the Constitution or By-Laws freezing the location to any particular location or place in Pulaski County.

The Board proposed to sell and exchange River-dale's property for the purpose of acquiring other property, which newly acquired property, in the judgment of the Board, would be an improvement over its present facilities as a whole and would be in the best interest of said Club. We do not think that the proposal of Pleasant Valley, if legally accepted by Riverdale, would have the effect of dissolving the Corporation and abandoning the enterprise for which it was created as contended by appellees. On the contrary, we are of the opinion River-dale's acceptance of said proposal would further the object and purposes of said Corporation; that is, "to provide recreational facilities for its members and their families by means of a country and outdoor sports club." (Constitution Art. 1). We are of the opinion that River-dale had power to make the proposed sale and exchange with Pleasant Valley.

The next question to be decided is, how can this power be exercised by Riverdale in the absence of any provision in its Articles and Constitution authorizing same?

We are of the opinion that the Board of Governors of Riverdale does not have the power to sell and exchange its entire property to Pleasant Valley.

"The Corporate Directors or trustees have no power to sell or otherwise dispose of the entire corporate property, unless the power to do so is conferred on the Direc-

tors by the charter or governing statute, in express language or by necesary implication; or unless the stockholders authorized them to do so, or consent thereto, or unless the Corporation is in failing circumstances or insolvent and it is necessary to do this in order to raise money to pay the debts of the Corporation." 19 C. J. S. Corporations, page 536.

Section 64-1306, Ark. Stats. 1947, gives the Corporation power "to sell, lease, mortgage, pledge, transfer or otherwise dispose of lands or real property, or any right or title therein, or improvements thereon, * * * * for any purpose of use, necessary, useful, or incidental to the accomplishment of the purposes of the Corporation." This statute gives the corporation power to sell or otherwise dispose of lands or real property, etc., but it does not give the Board of Governors or Directors of any Corporation the express power to sell and otherwise dispose of its entire property.

Ark. Stats. 64-1301, et seq. was repealed by Section 21 of Act 176 of the Acts of the General Assembly for 1963. See Section 64-1901 through 64-1921, Ark. Stats. 1947. Section 64-1903 provides that the Act shall apply to: "(b) All not for profit corporations heretofore organized under any act hereby repealed, for the purpose or purposes for which a corporation might be organized under this Act."

Section 64-1907 of said Act provides that each Corporation shall have power:

"(d) To sell, convey, mortgage, pledge, lease, exchange, transfer and otherwise dispose of all or any part of its property and assets."

The above sections give the Corporation the above powers but do not confer this power expressly on the governing Board of such Corporations.

In the case of Rives v. McGaughey, 210 Ark. 658, 197 S. W. (2d) 49, the Court said at page 663:

"Ordinarily, in the absence of a charter or statutory limitation on its authority (except in case of sale of all

assets), the Board of Directors of the Corporation has the power, when acting in good faith, to authorize the sale and conveyance of the real estate of the Corporation.''

The above statutes gave the governing body of said Corporation the authority to sell and convey the real estate of the Corporation in the ordinary course of its business, but it did not give it authority to sell and exchange all of the assets of said Corporation without first obtaining the approval of the members of said Corporation.

We are then confronted with the question, can a majority of a quorum of its members authorize the sale and exchange of its entire property and facilities, as contended by appellant, or must there be a unanimous vote of all of its members, as contended by the appellees, before the Board has the authority to act?

Our research has failed to show us that we have passed on this question, and counsel has not cited us any Arkansas cases directly in point. So, this is a question of first impression.

In resolving this question we give great weight to the actions of Riverdale when it became necessary for the Club to borrow money for its corporate purposes, in 1957. The members acting under Article VII of its charter, wherein it is provided that amendments may be made at any time to its Articles, amended Article VI, to read as follows:

''This Corporation shall have power to raise funds by the issuance of notes, bonds and other evidence of indebtedness, and shall have the power to pledge and mortgage its properties and assets, upon the affirmative vote of a majority of the members having voting rights.'' Riverdale, by this amendment, expressly gave the Corporation power to pledge and mortgage its properties and assets upon the affirmative vote of a majority of the members having voting rights. If it takes a majority of members to mortgage its properties to secure a debt

we cannot assume that the affirmative vote of a majority of a quorum of its members would have the power to sell and exchange its entire properties and facilities as provided for in the Pleasant Valley proposal. The power to sell and exchange all of its properties and facilities is a greater power than the power to mortgage same.

In 13 Fletcher Cyc. Corps., Perm. Ed. paragraph 797, at page 97, it is said:

"But while the weight of authority denies to the majority stockholders the power to sell all the corporate property where the Corporation is solvent and prosperous, there are decisions authorizing such a sale in any case where the majority deem it expedient so to do, and the trend of the later decisions seems to be in favor of permitting such a sale by the majority against the dissent of minority stockholders, when deemed expedient."

While the above quotation has reference to business Corporations, we think the rule is applicable to this case. The sale and exchange by Riverdale will not have the affect of dissolving the Corporation and abandoning the enterprise, but in the opinion of the Board it will have the opposite effect. The record shows that the Board gave consideration to the purposes of the Club for which it was organized and that the primary interest of most members was in having available, for themselves and their families, more adequate golf, clubhouse, and other facilities in as nice environment as available. The Board also gave consideration to the Club's overall membership, both now and as it will probably be in the future, the prospect for better facilities and their financing at both the proposed location and at the present site, and both Boards, both outgoing and incoming, unanimously recommended the sale and exchange of said property.

Courts should be reluctant to interfere with the internal government of benevolent corporations. There are adequate provisions in our Benevolent Corporation Law to permit Riverdale to establish its own rules and regulations governing the acceptance or rejection of

the Pleasant Valley proposal, but its members have not seen fit to establish such rules and regulations defining the number of votes necessary to approve the Pleasant Valley proposal. Such being the state of the record it our duty to set the standard. We, therefore, approve the modern trend of authorities and state under the facts in this case that the rule should be that the Board of Governors of Riverdale and its officers shall have power to approve the Pleasant Valley proposal when a majority of its members having voting rights have first approved same. They not having done so, the decree of the lower Court is affirmed.

WARD, J., disqualified and not participating.