Mrs. J. G. Burlingame *v.* Vernon J. Giss et al

5-4032                                          407 S. W. 2d 935

Opinion delivered November 14, 1966

*Leon B. Cattlett* and *Julius C. Acchione* and *U. A. Gentry*, for appellant.

*Herschel H. Friday, Jr.* and *Robert S. Lindsey* and *J. W. Barron*, for appellee.

Hugh M. Bland, Justice. The issues in this appeal grow out of and follow from our decision in *Giss, et al* v. *Apple, et al*, 239 Ark. 1124, 396 S. W. 2d 813. The background facts are that Pleasant Valley proposed that it would convey to Riverdale Country Club approximately 250 acres of land with an 18-hole golf course and a 9-hole golf course, constructed in accordance with plans and specifications submitted to Riverdale, including tees, fairways, and watering systems; that it would make available $1,150,000.00 to Riverdale for a club house, pro shops, youth center, tennis courts, parking areas and drives, and swimming pools; that it would make available to Riverdale an amount not to exceed $170,000.00 in order to pay off Riverdale's existing mortgage indebtedness.

In return Riverdale would convey to Pleasant Valley its presently owned land and facilities and meanwhile not increase its mortgage indebtedness. Riverdale would change its name to Pleasant Valley Country Club.

After a study of the proposal by a committee ap-

pointed by Riverdale, a majority of the membership present voted in favor of the proposal. Mr. William Apple and another regular member obtained an injunction in the Pulaski Chancery Court restraining the Board of Governors of the Riverdale Country Club from entering into the proposed exchange agreement with Pleasant Valley. The lower court held that Riverdale had no authority under the constitution and by-laws to effectuate the proposed trade with Pleasant Valley, Inc., without proper authorization of the members of said club and that the vote of Riverdale Country Club on October 26, 1964, at which time 47.35% of the members of said club voted to authorize said exchange with Pleasant Valley, did not legally authorize or empower the board of said club to enter into said agreement with Pleasant Valley whereby all the assets of Riverdale Country Club would be sold or exchanged. The case was appealed to this court and decided in *Giss* v. *Apple, supra.*

The same contentions were made in the *Giss* case by opponents of the sale that are made in this case; that the consummation of the exchange would constitute a radical and fundamental change in the corporate purposes which may not be done against the wishes of the minority.

The decision in the *Giss* case, which was in the natur of a declaratory judgment, held:

"(1) The club itself did have the power to make the proposed sale and exchange with Pleasant Valley.

(2) Under the applicable statutes, the club having been granted the power to establish its own form of government, it had the right to establish its own rules and regulations governing the acceptance or rejection of the Pleasant Valley proposal, including and defining the number of votes necessary to ap-

prove the same. But it had not done so, and the Board itself had not been expressly granted this power by the Constitution or By-laws.

(3) The consummation of the proposed exchange would not have the effect of destroying the original purpose of the incorporators or dissolving the corporation or abandoning the purpose for which it was created. On the contrary, it would further the object and purposes of the club. Therefore, a majority of the members having voting rights could legally authorize the Board to enter into the Exchange Agreement, but less than such majority could not do so.''

Pending this court's decision in the *Giss* case, Riverdale called and held a meeting on June 14, 1965 to vote upon the proposed amendment to the constitution now under attack in this case and did authorize the board to sell or exchange all of its properties upon the majority vote of the regular members at a proper meeting at which a majority of all the regular members were present in person or by proxy. At this time there were 550 regular members and the amendment carried by a vote of 314 for to 172 against.

Subsequently, at a meeting held on June 28, 1965, the board was authorized and empowered to consummate the proposed exchange by a vote of 347 regular members for and 133 regular members against.

The sole point relied upon by appellants is that the court erred in holding that the Riverdale Country Club had the power to amend its constitution to provide for the exchange of its entire assets against the will of a a minority of its members. The decision in *Giss* v. *Apple, supra,* is conclusive and determinative of this issue and we adopt that opinion as the law of this case.

The chancery court held, in the instant case, that by virtue of the action taken at special meetings of the Club held on June 14, 1965 and on June 28, 1965, the Board

of Governors of Riverale Country Club was legally authorized and empowered to proceed and act with respect to the proposed sale and exchange with Pleasant Valley, Inc., and dismissed the petition for injunction with prejudice.

We find no error in the action of the chancery court and the decree is, therefore, affirmed.

WARD, COBB, and AMSLER, JJ., disqualified and not participating.