Cite as 2024 Ark. App. 526

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-23-370

| | |
|---|---|
| MELANIE FOSTER; FOREST ROBERTS; KATHRYN CLARK; CHRISTIE WAGGONER; SAWNEY HUCKABAY; AND ALLEN FAMILY FARM, INC., AN ARKANSAS NON-PROFIT CORPORATION<br><br>APPELLANTS<br><br>V.<br><br>CARLA MURUAGA-ATKINS; CAROL ANN MARTIN, INDIVIDUALLY; LAURA MARTIN, INDIVIDUALLY; LAURA MARTIN, AS MOTHER AND NEXT FRIEND OF TWO UNEMANCIPATED MINOR CHILDREN; CAITLYN PETERSON, INDIVIDUALLY; CAITLYN PETERSON, AS MOTHER AND NEXT FRIEND OF THREE UNEMANCIPATED MINOR CHILDREN; AND KATHRYN AHLEFELD<br><br>APPELLEES | Opinion Delivered October 30, 2024<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-21-2909]<br><br>HONORABLE JOHN R. SCOTT, JUDGE<br><br><br><br><br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**CINDY GRACE THYER, Judge**

This is an appeal from an October 18, 2022 Benton County Circuit Court order that granted injunctive relief prohibiting certain real property owned by Allen Family Farm, Inc. (AFF), from being listed for sale and that granted declaratory relief, resolving the issue of

membership in that organization. Appellants here, defendants below, are Melanie Foster, Forest Roberts, Kathryn Clark, Christie Waggoner, Sawney Huckabay, and AFF.[1] Appellees here, plaintiffs below, are Carla Muruaga-Atkins; Carol Ann Martin; Laura Martin, individually and as next friend of her two minor children; Caitlyn Peterson, individually and as next friend of her three minor children; and Kathryn Ahlefeld.

Appellants raise three points on appeal: (1) the clear preponderance of the evidence demonstrates that AFF had established valid membership rules—one must be twenty-one years old to be eligible to join the nonprofit social club and must apply and pay dues and assessments as incurred—and only qualified members voted in the December 2021 election to sell AFF property; (2) appellees were equitably estopped from waiting to bring their suit until after the election was held and the results known; and (3) the election was valid and not void because allegedly "inaccurate" information was conveyed. We affirm in part; reverse in part; and remand for further findings consistent with this opinion.

I. *Factual and Procedural History*

James R. Allen was the original owner of the property subject to this lawsuit. Allen was widowed in 1936 and lived until 1944, never remarrying. He and his late wife had ten children:  Allie Belle; Neva; Daniel (Dan); James; Monell; Minnie Lou; Sam; Gilbert; Tom; and Lois.[2] All ten have passed away.

---

[1]Lillian Van Houten, a defendant below, asked that she not be included in the appeal.

[2]Appellees all descend from Neva Martin Jones.

2

In 1940, Allen deeded 372.95 acres of his farm to his eldest child, Allie Belle Root, reserving to himself ten acres around the house, barn, and associated structures. When he died in 1944, each of the ten children received an equal, undivided one-tenth interest in the ten acres around the house.

In 1967, Allie Belle deeded the 372.95 acres to her siblings Sam, Tom, Gilbert, and Monell. Monell passed away in 1983, leaving appellant Melanie Foster, formerly Melanie Sawka, as her heir. Those four grantees from Allie Belle Root each then owned by deed an undivided one-fourth interest in 372.95 acres, along with their inherited undivided one-tenth interests in the ten acres that James R. Allen had held solely in his name when he died in 1944.

Forty years after Allen died, in 1984, two of James's children—Sam (father of appellant Christie Waggoner) and Gilbert (father of defendant Lillian Van Houten)—along with James's grandchild, Melanie Sawka, formed AFF as an Arkansas nonprofit corporation pursuant to the 1963 Arkansas Nonprofit Corporation Act, Arkansas Code Annotated sections 4-28-201 et seq. (Repl. 2016 & Supp. 2023) (the 1963 Act).[3] Formation was finalized after the Sebastian County Circuit Court found that the articles of incorporation conformed to law and that the corporation had been formed for a lawful purpose.

The articles of incorporation reflect that AFF was formed for the following purpose:

> [T]o promote the preservation of the Allen Family Farm and the cabins and buildings thereon and to provide for membership in said organization for the various

---

[3]The articles of incorporation were never amended to allow AFF to be governed by the 1993 Act.

members of the Allen family who are direct descendants of James Robert Allen, for use as a recreation area, and to provide for the restoration of the old farm, to be enjoyed by the family and used and preserved by the members of this association, and for such other purposes which will promote the pleasure and welfare of the membership.

The articles further reflect that "provision for the regulation of the internal affairs of this corporation are vested in the Board of Directors and the By-Laws of the corporation."

Once incorporation was approved, AFF began asking all the owners (including the incorporators) to deed to AFF all the remaining outstanding interests in the family farm. This appears to have occurred.

The record contains what the parties have identified as AFF's initial bylaws, which provide:

Those persons who are direct descendants of James Robert Allen who are interested in the establishment and preservation and reservation of the old Allen family farm [. . .] as a recreation area, preservation and reservation of the old farm life and natural lands of the Allen family farm, as well as the historical landmarks thereon, and those who are willing to expend their efforts and money toward that purpose, are eligible for membership in this association. In order to become a member, each person qualified as above set out shall make application on an application form supplied by the corporation. Each applicant shall pay One Dollar ($1.00) with the application which shall constitute the dues for the first year. Annual dues for each member shall then be set by the Board of Directors and shall be payable at the annual meeting on a basis of a calendar year. However, special assessments may be asked by the members of the Board of Directors herein created. Membership in this corporation may be termination by any member wishing to leave the association or termination may be made by the membership committee when the member in question is no longer qualified under the terms of the Articles.

The bylaws, which are undated and unsigned, do not appear to have ever been formally voted on within a meeting and passed—at least not as reflected in any minutes.

4

The Internal Revenue Service subsequently granted AFF 501(c)(7) status as a nonprofit social club.

AFF held its first meeting on October 20, 1984. The minutes of that meeting reflect that those attending conferred at length about enrolling members, and attendees agreed that any direct descendant of James R. Allen was eligible for membership; but to become a member, the descendent must be twenty-one years old and apply. The initial first-year dues were set at one dollar plus an equal share of that year's assessment. Dues thereafter were to be set by the board of directors (the Board).

At the next meeting in June 1985 (as reflected by the minutes), members agreed that a direct descendant of James R. Allen could become a member after he or she turned twenty-one, so long as he or she became a member before the end of their twenty-fifth year. To become a member, such persons would pay one dollar in initial dues and any assessments that were ordered between their twenty-first birthday and their application date.

By 2011, all but one of James R. Allen's children had died. Some enrolled members had chosen not to continue paying dues and were no longer on the membership roll. Some descendants had never applied to become members in the first place. The minutes from the June 18, 2011 AFF meeting reflect that a motion was made and seconded that every blood descendant of J.R. and Mamie Allen age twenty-five or older who could be located would be sent a certified letter to be invited to be a "vested" member of AFF—which meant being a partial owner of AFF—with payment of dues, including back dues and assessments by AFF, which must be paid in full within a one-year period. Any blood descendant that chose not

5

to become a member in response to the letter forfeited all rights to becoming vested. The motion carried. Thus, AFF had voted to open its membership roll to former members who had ceased paying dues or assessments and to descendants who had failed to apply for membership before the end of their twenty-fifth year. AFF was able to locate thirty direct descendants of James R. Allen who were not members of AFF. AFF sent them certified letters in August 2012. That solicitation garnered five new members.

After Sam Allen, the last living child of James R. Allen, died in 2013, members would from time to time ask Christie Waggoner and other members whether the farm should be sold. They noted that its income was decreasing, larger maintenance expenses were on the horizon, and fewer and fewer of the far-spread grandchildren and great-grandchildren were using the farm for recreational purposes. On June 21, 2014, the Board approved a motion, moved and seconded, that "dues be payable January 1 through June 30, and if not paid by December 31, the membership is no longer vested and membership is permanently terminated."

In October 2021, the Board again referred to its membership the question of whether to sell the farm. Carla Muruaga-Atkins asked that, if the family voted to sell the property, she be given the option to gather funds to purchase the property and that her name be listed in the realtor agreement to avoid paying realtor fees. The Board agreed. It then put the decision of whether to sell the property to a vote and sent a letter to the "membership" explaining the request to sell along with a ballot. Ballots were sent to the forty-six direct descendants of James R. Allen who were enrolled as members and considered vested.

Prior to the vote, two letters were sent to the "membership." One of the letters informed the members that, on the basis of current membership numbers, a sale at full list price would result in an approximate net payout of $65,000 per member in good standing, and a sale for $3 million would result in a net payout of approximately $55,000 per member. Two additional members joined after this notice was given by paying one dollar, which increased the total "membership" to forty-eight.

The vote was counted on December 4, 2021, which resulted in a vote of 25–23 in favor of selling the farm. Appellee Carla Muruaga-Atkins voted against the sale.

It was later revealed that Carla questioned the legality of the Board's decision to limit the vote to the "vested" members and had sought legal advice prior to the vote.[4] However, despite having been an AFF board member since before 2011, she never informed the other board members that she had questions regarding the validity of their membership definition.

Four days after the vote, appellees filed a complaint for injunctive relief in the Benton County Circuit Court seeking an injunction to prohibit the sale of the farm.[5] Appellees alleged that the incorporators of AFF intended that all direct descendants of James R. Allen be irrevocably enrolled as members of AFF, regardless of age, ability, and willingness to

---

[4]In fact, the day before the vote, her counsel forwarded to her a draft complaint alleging that all direct descendants were eligible voters, not just the forty-eight vested members.

[5]They filed a notice of lis pendens regarding the farm in the Benton County Circuit Court the next day.

support the company with dues and assessments. They further claimed that the vote invalidly excluded eligible descendants who were not members by reason of age (i.e., were under twenty-one) or because their membership had terminated (for example, when dues or assessments were not paid). The suit also demanded that the twenty-five members who voted to offer the farm for sale be disqualified as members. The complaint was amended on March 31, 2022.

A bench trial was held on October 17. Three appellees testified: Carla Muruaga-Atkins; Carol Ann Martin; and Caitlyn Latham-Peterson. Two appellants testified: Melanie Foster and Christie Waggoner. Many exhibits were introduced, including the articles of incorporation, the unsigned bylaws, the minutes of the annual meetings, the two letters to the members preceding the vote, and a copy of the ballot. After hearing the evidence, the circuit court ruled in favor of the appellees and set aside the vote to sell the farm.

On October 18, 2022, the circuit court entered its written order finding that the AFF Board had never executed or formally adopted any bylaws, and as such, there were no bylaws to be amended, informally or otherwise. Because there were no bylaws in place that governed AFF, the articles of incorporation controlled. In light of the language in the articles of incorporation, the court found that the members of AFF were the descendants of James R. Allen and that there were no other requirements for membership.

The circuit court then determined that AFF could list and sell the farm only if a majority of its members voted to do so, thereby promoting the pleasure and welfare of the membership. A vote to sell must also be based on accurate information as to the terms and

8

results of a sale. It concluded that the Board's ballot had incorrectly stated that the sale proceeds would be distributed to the members and that under Arkansas Code Annotated section 4-28-202(4), the members of AFF could receive nothing from the sale. Finally, the circuit court held that there was insufficient evidence presented upon which to remove any of the members for self-dealing or breach of fiduciary duties.

On November 1, 2022, appellants moved for a new trial. The circuit court denied that motion on November 10. This timely appeal followed.

## II. *Standard of Review*

The standard of review on appeal from a bench trial is whether the circuit court's findings of fact were clearly erroneous or clearly against the preponderance of the evidence. *Morningstar v. Bush*, 2011 Ark. 350, at 4–5, 383 S.W.3d 840, 844. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been made. *Id.* However, disputed facts and determinations of credibility are within the province of the fact-finder. *Id.* A circuit court's conclusions of law are reviewed de novo on appeal. *Hickman v. Courtney*, 361 Ark. 5, 9, 203 S.W.3d 632, 635 (2005).

## III. *Issues on Appeal*

On appeal, AFF argues that the circuit court erred in its conclusion that the appellees were equitably estopped from obtaining the relief they requested; that there were no bylaws with which to define the class of members of the organization; and that the vote to sell the property was void because "inaccurate" ballot information had been provided.

As to equitable estoppel, appellants assert that appellees were equitably estopped from bringing their claims because they waited to sue until after the election was held. The circuit court, however, made no such finding, so there is nothing to review here. *Bob Cole Bail Bonds, Inc. v. Brewer*, 374 Ark. 403, 288 S.W.3d 582 (2008); *Hendrix v. Black*, 373 Ark. 266, 283 S.W.3d 590 (2008).

The next issue concerns the validity of the bylaws upon which AFF had been operating. The circuit court concluded that AFF had no bylaws, finding that the proposed

bylaws had never been executed or adopted by the members or the Board. AFF argues this was erroneous, claiming that the bylaws—specifically, the membership rules of 1984, 1985, 1998, and 2011—had been adopted by acquiescence and that those bylaws established valid membership rules, including who was a member qualified to vote on the decision to list the property for sale. AFF is correct.

Generally, the initial bylaws are adopted at the first organizational meeting. 8 William Meade Fletcher et al., *Fletcher Cyclopedia Of the Law of Corporations* § 4173 Westlaw (database updated September 2024). However, if the charter, governing statute, or articles of incorporation are silent as to the formalities to be observed, no particular mode of enactment or formality is necessary, and a bylaw may be adopted either orally or in writing, or by acts as well as by words. 18 C.J.S. *Corporations* § 161 Westlaw (database updated May 2024); *see also* 18A Am. Jur. 2d *Corporations* § 258 Westlaw (database updated October 2024). Accordingly, bylaws need not be signed to be adopted, and an express vote is not necessarily essential to the valid adoption of bylaws. 18 C.J.S. *Corporations* § 161; Fletcher, *supra* § 4173. Rather, bylaws may be adopted by the corporation's conduct, as evinced by officers' conduct. And officers' conduct is as effective as an express vote or an adoption at a meeting. Fletcher, *supra* § 4173. Custom or usage, where long continued and invariably pursued and that is not repugnant to any statutory or charter provisions, may also acquire the legal force of a bylaw. *Id.*

Here, nothing in the 1963 Act or in the articles of incorporation specify the way bylaws must be adopted; nor do they prohibit the informal adoption of bylaws. Thus, the circuit court's legal conclusion that the bylaws required formal execution was in error.

Additionally, since the very inception of AFF, everyone involved in the corporation, including the appellees, acted as though these "initial bylaws" governed the internal proceedings and administration of AFF. The bylaws were referred to, referenced, and allegedly "amended" by the participants as documented by the minutes of the annual meetings throughout the years. There is no record of any objection to the validity of the bylaws in any of the minutes, despite objections to other actions being noted therein from time to time. Appellees, in their initial and first amended complaints, even cited the bylaws and complained that appellants had violated their provisions. But there is simply no evidence in our record that anyone ever questioned the bylaws' validity until appellees filed their countermotion for summary judgment in April 2022. By that time, AFF had been operating for over thirty-eight years; had contracted with third parties; had sold and traded property; and had otherwise engaged in the necessary operations of the organization, including electing officers and directors and applying for 501(c)(7) exemption status, all presumably under the auspices of those bylaws.

Under these facts, it is clear there was sufficient evidence to find that the initial bylaws were adopted by AFF despite the lack of formal execution. As such, the circuit court's determination that AFF had no bylaws was clearly erroneous.

Since the circuit court incorrectly held there were no bylaws that could be amended, it never determined whether the alleged "amendments" to the bylaws—specifically, the membership qualifications—were validly adopted, either formally or informally; it also never considered whether the membership qualifications set forth in the bylaws improperly contradicted the definition of membership in the articles of incorporation. Accordingly, we reverse and remand for a redetermination as to whether some or all of the descendants of James R. Allen are members of AFF; whether the members or the Board are entitled to vote on the sale of the property; and whether the bylaws create more than one class of membership for purposes of voting, for ownership in the corporation, or both.

This leaves us with the third issue raised on appeal. Appellants claim that the circuit court erred when it found that AFF was statutorily prohibited from distributing the proceeds of the sale to its members. Although we reverse and remand on the membership issue, we address this one, too, because it was preserved and is highly likely (if not certain) to recur on remand. *Rees v. Smith*, 2009 Ark. 169, 301 S.W.3d 467 (addressing only those issues likely to recur on remand); *Bailey v. Rose Care Ctr.*, 307 Ark. 14, 20, 817 S.W.2d 412, 415 (1991) (reversing and remanding on first point on appeal, then proceeding to address and reject two other of appellant's points on appeal "since they will likely recur on remand").

Here, because the circuit court found that Arkansas Code Annotated section 4-28-202(4) and "the controlling statutes applicable to AFF" prohibited *income* distribution to the members, directors, and officers of the corporation of AFF, a not-for-profit corporation, it concluded that AFF members could receive nothing for the sale of the property.

13

Section 4-28-202(4) is in the definition section of the 1963 Act and defines a not-for-profit corporation as "a corporation no part of the income of which is distributable to its members, directors, or officers." Ark. Code Ann. § 4-28-202(4). Likewise, "[n]o dividend shall be paid and no part of the income of a corporation shall be distributed to its members, directors, or officers." Ark. Code Ann. § 4-28-219(b). Thus, to the extent the circuit court found that AFF was attempting to distribute income generated from the sale of the property to its members, the court was correct in finding that the 1963 Act prohibits it. The inability to distribute income or "profit" to its members is literally what defines the organization as a "nonprofit."

But distributing income of an ongoing organization to its members is different than distributing the corporation assets to its members upon its dissolution. While the court is correct that the 1963 Act prohibits *income* distribution to members, it does not similarly prohibit the distribution of its *assets* upon dissolution of the corporation.[6] In fact, the 1963 Act specifically contemplates it. Arkansas Code Annotated section 4-28-206(4) states that the

---

[6]While not controlling as to the legality of the distribution here under Arkansas law, we note that the Internal Revenue Service (IRS) also contemplates such a scenario. Revenue Ruling 58-501 states that "where a social club, qualified for tax exemption under section 501(c)(7) of the Internal Revenue Code of 1954, finds it impracticable to continue to conduct its exempt activities and, as a result, sells its property and liquidates, such sale is incidental to its exempt purposes and the club is still to be considered as operated exclusively for pleasure, recreation and similar purposes up through the date of the sale and distribution of the liquidated assets to its active members." Rev. Rule 58-501, 1958-2 C.B. 262. Accordingly, it appears that, at least in some circumstances, a dissolving 501(c)(7) corporation may distribute a portion of the profit resulting from a sale to its members without causing the club to lose its exemption for IRS purposes.

14

articles of incorporation must set forth any provisions the incorporators impose, including "any provision for distribution of assets on dissolution or final liquidation."[7] The AFF articles are silent in this regard and, therefore, do not expressly prohibit the distribution of its assets to its members on dissolution. Thus, whether the proceeds from the sale of the property can be distributed to its members may rest on whether AFF's dissolution is contemplated by the parties and whether such a distribution is permitted under the AFF articles of incorporation—issues to be resolved by the circuit court in the first instance. The circuit court here did not make that determination.

Because we find that the circuit court erred in its blanket determination that the 1963 Act prohibits the proceeds of the sale of assets from being distributed to its members, we reverse on this point and remand for further consideration and findings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

HARRISON, C.J., and GRUBER, J., agree.

*Smith, Cohen & Horan, PLC*, by: *Matthew T. Horan*; and *Everett Law Firm*, by: *John C. Everett*, for appellants.

*RMP LLP*, by: *Timothy C. Hutchinson*, for appellees.

---

[7]This does not apply to 501(c)(3) not-for-profit organizations. While the 1963 Act specifically provides for what must happen to the assets of a 501(c)(3) corporation upon dissolution, it does not address dissolution of a 501(c)(7) corporation. Ark. Code Ann. § 4-28-207.