Cite as 2026 Ark. App. 336

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-25-386

| | |
|---|---|
| CARLA MURUAGA-ATKINS; CAROL ANN MARTIN; LAURA MARTIN, INDIVIDUALLY; LAURA MARTIN, AS MOTHER AND NEXT FRIEND OF TWO UNEMANCIPATED MINOR CHILDREN; CAITLYN PETERSON, INDIVIDUALLY; CAITLYN PETERSON, AS MOTHER AND NEXT FRIEND OF THREE UNEMANCIPATED MINOR CHILDREN; AND KATHRYN AHLEFELD | Opinion Delivered May 20, 2026<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-21-2909]<br><br>HONORABLE JOHN R. SCOTT, JUDGE |
| APPELLANTS | |
| V. | |
| MELANIE FOSTER; FOREST ROBERTS; KATHRYN CLARK; CHRISTIE WAGGONER; LILLIAN VAN HOUTEN; SAWNEY HUCKABAY; AND ALLEN FAMILY FARM, INC., AN ARKANSAS NON-PROFIT CORPORATION | |
| APPELLEES | |
| | AFFIRMED |

**CINDY GRACE THYER, Judge**

This case involves an action to prevent certain real property owned by Allen Family

Farm, Inc. (AFF), from being listed for sale and to resolve the issue of membership in that

organization. Appellants here, plaintiffs below, are Carla Muruaga-Atkins; Carol Ann

Martin; Laura Martin, individually and as next friend of her two minor children; Caitlyn Peterson, individually and as next friend of her three minor children; and Kathryn Ahlefeld. Appellees here, defendants below, are Melanie Foster, Forest Roberts, Kathryn Clark, Christie Waggoner, Lillian Van Houten, Sawney Huckabay, and AFF.

Appellants raise four points on appeal: (1) the circuit court applied the wrong legal standard when it determined that they were required to demonstrate they had been defrauded in order to prevail; (2) the circuit court incorrectly found that the membership restrictions implemented in the bylaws were not in conflict with the articles of incorporation and were valid; (3) the circuit court erroneously held that AFF could sell all its land and abandon its corporate purpose in contravention of our supreme court's opinion in *Giss v. Apple*, 239 Ark. 1124, 396 S.W.2d 813 (1965); and (4) the circuit court further erred in its determination that the election was valid and not void despite allegedly "inaccurate" information being conveyed.

I. *Factual and Procedural History*

James R. Allen was the original owner of the property subject to this lawsuit. Allen was widowed in 1936 and lived until 1944, never remarrying. He and his late wife had ten children: Allie Belle, Neva, Daniel (Dan), James, Monell, Minnie Lou, Sam, Gilbert, Tom, and Lois. All ten have passed away.

In 1940, Allen deeded 372.95 acres of his farm to his eldest child, Allie Belle Root, reserving to himself ten acres around the house, barn, and associated structures. When he

2

died in 1944, each of the ten children received an equal undivided one-tenth interest in the ten acres around the house.

In 1967, Allie Belle deeded the 372.95 acres to her siblings Sam, Tom, Gilbert, and Monell. Monell passed away in 1983, leaving appellee Melanie Foster, formerly Melanie Sawka, as her heir. Those four grantees each then owned by deed an undivided one-fourth interest in 372.95 acres, along with their inherited undivided one-tenth interests in the ten acres that James R. Allen had held solely in his name when he died in 1944.

In 1984, forty years after James R. Allen died, two of his children—Sam (father of appellee Christie Waggoner) and Gilbert (father of appellee Lillian Van Houten)—along with his grandchild, Melanie Foster, formed AFF as an Arkansas nonprofit corporation pursuant to the 1963 Arkansas Nonprofit Corporation Act, codified at Arkansas Code Annotated sections 4-28-201 et seq. (Repl. 2016 & Supp. 2023) (the 1963 Act).[1] Formation was finalized after the Sebastian County Circuit Court found that the articles of incorporation conformed to law and that the corporation had been formed for a lawful purpose.

The articles of incorporation reflect that AFF was formed for the following purpose:

> [T]o promote the preservation of the Allen Family Farm and the cabins and buildings thereon and to provide for membership in said organization for the various members of the Allen family who are direct descendants of James Robert Allen, for use as a recreation area, and to provide for the restoration of the old farm, to be enjoyed by the family and used and preserved by the members of this association, and for such other purposes which will promote the pleasure and welfare of the membership.

---

[1]The articles of incorporation were never amended to allow AFF to be governed by the 1993 Act.

The articles further reflect that "provision for the regulation of the internal affairs of this corporation are vested in the Board of Directors and the By-Laws of the corporation."

Once incorporation was approved, AFF began asking all the owners (including the incorporators) to deed to AFF all the remaining outstanding interests in the family farm. This appears to have occurred.

The record contains what the parties have identified as AFF's initial bylaws, which provide:

> Those persons who are direct descendants of James Robert Allen who are interested in the establishment and preservation and reservation of the old Allen family farm . . . as a recreation area, preservation and reservation of the old farm life and natural lands of the Allen family farm, as well as the historical landmarks thereon, and those who are willing to expend their efforts and money toward that purpose, are eligible for membership in this association. In order to become a member, each person qualified as above set out shall make application on an application form supplied by the corporation. Each applicant shall pay One Dollar ($1.00) with the application which shall constitute the dues for the first year. Annual dues for each member shall then be set by the Board of Directors and shall be payable at the annual meeting on a basis of a calendar year. However, special assessments may be asked by the members of the Board of Directors herein created. Membership in this corporation may be terminated by any member wishing to leave the association or termination may be made by the membership committee when the member in question is no longer qualified under the terms of the Articles.

The bylaws, which are undated and unsigned, do not appear to have ever been formally voted on within a meeting and passed—at least not as reflected in any minutes.

The Internal Revenue Service subsequently granted AFF 501(c)(7) status as a nonprofit social club.

AFF held its first meeting on October 20, 1984. The minutes of that meeting reflect that those attending conferred at length about membership enrollment. The attendees agreed that any direct descendant of James R. Allen would be eligible for membership, but to become a member, the descendent must be twenty-one years old and apply. The initial first-year dues were set at one dollar plus an equal share of that year's assessment. Dues thereafter were to be set by the board of directors (the Board).

At the next meeting in June 1985 (as reflected by the minutes), members agreed that a direct descendant of James R. Allen could become a member after he or she turned twenty-one, so long as he or she became a member before the end of their twenty-fifth year. To become a member, such persons would pay one dollar in initial dues and any assessments that were ordered between their twenty-first birthday and their application date.

By 2011, all but one of James R. Allen's children had died. Some enrolled members had chosen not to continue paying dues and were no longer on the membership roll. Some descendants had never applied to become members in the first place. The minutes from the June 18, 2011 AFF meeting reflect that a motion was made and seconded that every blood descendant of James R. and Mamie Allen age twenty-five or older who could be located would be sent a certified letter to be invited to be a "vested" member of AFF—which meant being a partial owner of AFF—with payment of dues, including back dues and assessments by AFF, which must be paid in full within a one-year period. Any blood descendant who chose not to become a member in response to the letter forfeited all rights to becoming vested. The motion carried. Thus, AFF had voted to open its membership roll to former

members who had ceased paying dues or assessments and to descendants who had failed to apply for membership before the end of their twenty-fifth year. AFF was able to locate thirty direct descendants of James R. Allen who were not members of AFF. AFF sent them certified letters in August 2012. That solicitation garnered five new members.

After Sam Allen, the last living child of James R. Allen, died in 2013, members would from time to time ask Christie Waggoner and other members whether the farm should be sold. They noted that its income was decreasing, larger maintenance expenses were on the horizon, and fewer and fewer of the far-spread grandchildren and great-grandchildren were using the farm for recreational purposes. On June 21, 2014, the Board approved a motion, moved and seconded, that "dues be payable January 1 through June 30, and if not paid by December 31, the membership is no longer vested and membership is permanently terminated."

In October 2021, the Board again referred to its membership the question of whether to list the farm for sale. In response, Carla Muruaga-Atkins asked that, if the family voted to sell the property, she be given the option to gather funds to purchase the property and that her name be listed in the realtor agreement to avoid paying realtor fees. The Board agreed. It then put the decision of whether to list the property to a vote and sent a letter to the "membership" explaining the request to list the property along with a ballot.[2] Ballots were

---

[2]The letter was drafted by Carla Muruaga-Atkins.

6

sent to the forty-six direct descendants of James R. Allen who were enrolled as members and considered vested.

A second letter was also sent to members before the vote. It informed the members that, on the basis of current membership numbers, a potential sale at full list price would result in an approximate net payout of $65,000 per member in good standing, and a sale for $3 million would result in a net payout of approximately $55,000 per member. Two additional members joined after this notice was given by paying one dollar, which increased the total "membership" to forty-eight.

The vote was counted on December 4, 2021, which resulted in a vote of 25–23 in favor of listing the farm with a realtor.

Appellee Carla Muruaga-Atkins voted against the proposal.

It was later revealed that Carla questioned the legality of the Board's decision to limit the vote to the "vested" members and had sought legal advice before the vote.[3] However, despite having been an AFF board member since before 2011, she never informed the other board members that she had questions regarding the validity of their membership definition.

Four days after the vote, appellants filed a complaint for injunctive relief in the Benton County Circuit Court, seeking an injunction to prohibit the sale of the farm.[4]

---

[3]In fact, the day before the vote, her counsel forwarded to her a draft complaint alleging that all direct descendants were eligible voters, not just the forty-eight vested members.

[4]They filed a notice of lis pendens regarding the farm in the Benton County Circuit Court the next day.

7

Appellants alleged that the incorporators of AFF intended that all direct descendants of James R. Allen be irrevocably enrolled as members of AFF, regardless of age, ability, and willingness to support the company with dues and assessments. They further claimed that the vote invalidly excluded eligible descendants who were not members by reason of age (i.e., were under twenty-one) or because their membership had terminated (for example, when dues or assessments were not paid). The suit also demanded that the twenty-five members who voted to offer the farm for sale be disqualified as members. The complaint was amended on March 31, 2022.

A bench trial was held on October 17.

Three appellants testified: Carla Muruaga-Atkins, Carol Ann Martin, and Caitlyn Latham-Peterson. Two appellees testified: Melanie Foster and Christie Waggoner. Many exhibits were introduced, including the articles of incorporation, the unsigned bylaws, the minutes of the annual meetings, the two letters to the members preceding the vote, and a copy of the ballot. After hearing the evidence, the circuit court ruled in favor of the appellants and set aside the vote.

On October 18, 2022, the circuit court entered its written order finding that the Board had never executed or formally adopted any bylaws, and as such, there were no bylaws to be amended, informally or otherwise. Because there were no bylaws in place that governed AFF, the articles of incorporation controlled. In light of the language in the articles of incorporation, the court found that the members of AFF were the descendants of James R. Allen and that there were no other requirements for membership.

The circuit court then determined that AFF could list and sell the farm only if a majority of its members voted to do so, thereby promoting the pleasure and welfare of the membership. It also determined that a vote to sell must be based on accurate information as to the terms and results of a sale. It concluded that the Board's ballot had incorrectly stated that the sale proceeds would be distributed to the members, because under Arkansas Code Annotated section 4-28-202(4) (Repl. 2016), the members of AFF could receive nothing from a sale. Finally, the circuit court held that there was insufficient evidence presented upon which to remove any of the members for self-dealing or breach of fiduciary duties.

Appellees appealed, and this court reversed the circuit court, concluding that (1) the circuit court's legal conclusion that the bylaws required formal execution was in error; (2) there was sufficient evidence to find that the initial bylaws were adopted by AFF despite the lack of formal execution; and (3) the circuit court erred in its blanket determination that the 1963 Act prohibits the proceeds of a sale of assets from being distributed to its members. *Foster v. Muruaga-Atkins*, 2024 Ark. App. 526, 700 S.W.3d 501. We remanded for a redetermination as to whether some or all the descendants of James R. Allen are members of AFF; whether the members or the Board are entitled to vote on the sale of the property; and whether the bylaws create more than one class of membership for purposes of voting, for ownership in the corporation, or both. *Id.* We also remanded for the circuit court to determine whether AFF's dissolution is contemplated by the parties and whether distribution of the proceeds from any sale of the property is permitted under the AFF articles of incorporation. *Id.*

9

On remand, the court dismissed appellants' complaint with prejudice. In doing so, it entered extensive findings of fact and conclusions of law. After reciting the history of AFF, the creation of its articles and bylaws—including the membership requirements, and the circumstances surrounding the vote to list the sale of the property and subsequent lawsuit, the circuit court determined:

29.  The membership rules of AFF are not in conflict with any statute of the State of Arkansas. AFF's rules supplement its Articles of Incorporation. The Articles declare that the corporation will provide for membership. The corporation has done so in meetings attended by incorporators and by elected directors. There is no evidence of any dissent.

30.  The Articles of Incorporation approved by the Sebastian County Circuit Court do not mention "classes" of membership.

31.  The statutes of Arkansas that govern non-profit corporations state that such entities may have more than one class of members, *if provided for in the Articles*, Ark. Code Ann. § 4-28-210.

32.  AFF's Articles do not provide for more than one class of members.

33.  To date, the members have allowed non-member descendants to *use* the farm and its facilities. The non-members do not own the land; they have never voted on questions concerning the club. Plaintiff's counsel argued to the Court that the inability to vote never hurt the non-members, because they could always visit the farm for free, and they did not have to pay dues.

34.  No one was defrauded by the modest membership rules, or dues that have not kept pace with inflation.

35.  The corporation, as a whole, voted 25-23 on December 4, 2021, to *list* the property for sale. Should an offer be received, the membership specified that it would be the Board of Directors who would approve any sale.

36.  The corporation's powers include selling its real estate, and this power is also supplied by statute, Ark. Code Ann. § 4-28-209(4), which governs both the Articles and the bylaws. The Articles do not declare that the land may never be sold.

10

37. Because the Board of Directors controls whether the land will be sold, any duty to secure Board approval of a sale is assured.

38. Plaintiff Carla Muruaga-Atkins asked at the October 2021 directors meeting that voted to refer the question to the membership that she be given a right of first refusal. They acceded to her request. She was not defrauded by any of the language in the terms of the election proposal which she drafted.

(Emphasis in original.)

The court then issued the following conclusions of law:

1. The membership rules of 1984, 1985, 1998 and 2011 have been adopted by acquiescence and those bylaws established valid membership rules, including who was a member qualified to vote on the decision to list the property for sale. *Foster et al. v. Muruaga-Atkins et al.*, 2024 Ark. App. 526.

2. The membership roll has been kept by Defendant Lillian Van Houten almost continuously since 1985. This procedure is one in which all have acquiesced. Since the conflicting and inconsistent membership rules of 1984, 1985, 1998, and 2011 have been adopted by acquiescence, the members listed in the membership roll maintained by Lillian Van Houten are the members entitled to vote on issues brought before the membership. Some of the descendants of James R. Allen are members of AFF, and some descendants of James R. Allen are not members of AFF.

3. Every person eligible to vote under the membership roll maintained by Lillian Van Houten did so on December 4, 2021.

4. There is no evidence that any direct descendant of James R. Allen asked to pay dues late in order to vote in the December 4, 2021, election, and was refused. There is no evidence that any direct descendant of James R. Allen who was eligible to become a member, and requested a ballot so as to vote in the December 4, 2021, election, was not delivered a ballot.

5. The membership legally voted simply that the corporation could *list* the real property for sale, pursuant to the conflicting and inconsistent bylaws of 1984, 1985, 1998, and 2011, which the membership adopted by acquiescence.

6. If an offer to purchase the land were received, the Board of Directors would be authorized to accept it or reject it.

7. Nothing in this manner of proceeding is illegal under Arkansas law.

8. Because the Articles of Incorporation do not provide for more than one class of members, there is only one class of members. That class controls the corporation through its votes, and the membership of that single class derivatively owns the land through the corporation, under the common law.

9. The Complaint for an Injunction fails for lack of evidence that Defendants defrauded the Plaintiffs.

10. Any relief requested by either party, not granted by this order is hereby denied.

Appellants filed a timely motion for new trial or, in the alternative, motion for additional findings of fact and conclusions of law. Appellants claimed that the circuit court had utilized an incorrect legal standard—proof of fraud—in making its ruling. They also challenged several of the court's factual findings—that there was only one class of members; that the board of directors can approve the sale; and that no member tried to reapply for membership because Martin had testified that she had. In the alternative, they asked the court to make additional findings and conclusions—that the vote invaded their property or pecuniary rights or interests; that the bylaws are in conflict with the Articles; that a sale of the property is in direct contradiction to its corporate purpose; and that the letter to the vested members was inaccurate and invalidated the vote.

Appellees responded, arguing that, contrary to appellants' assertion, Martin had attempted to reapply for membership in 2014, not in 2021 when the vote occurred. They also argued that the bylaws supplemented, rather than contradicted, the articles. Moreover, they contended there was only one class of members with the other descendants being mere

licensees of the property. Additionally, they claimed that no one had been defrauded, and no one had been injured pecuniarily or in their property because they were not adversely affected in a legally enforceable property right. They further contended that AFF was not prohibited from selling all the property because the articles indicated that the farm's preservation is only to be promoted, not assured. Finally, they deny that the letter to the membership was fraudulent. No one testified that they were deceived by the letter into voting to list the property for sale. In fact, they argued that the appellants in their brief admitted that if the property sells and the corporation dissolves, then the members will eventually get a distribution. As such, additional findings and conclusions were unnecessary.

The appellants replied, arguing that its failure to challenge each and every finding did not mean it had admitted the accuracy of the nonchallenged findings; that the court of appeals had instructed the circuit court to reconsider their arguments; that the appellees had misconstrued the holdings in *Arkansas Activities Ass'n v. Meyer*, 304 Ark. 718, 805 S.W.2d 58 (1991); that the law in *Giss v. Apple*, 239 Ark. 1124, and *Dunaway v. Garland County Fair & Livestock Ass'n, Inc.*, 97 Ark. App. 181, 245 S.W.3e 678 (2006) applied; that appellees had misconstrued the court's holding in *Dunaway*; that a vote to list the property is not the same as a vote to approve the sale of the property; that the sale of the land would violate the purpose of AFF and would be invalid; and last, that the letter was inaccurate, and a new vote is required.

After considering the parties' arguments, the court denied the motion and, again, dismissed the complaint with prejudice.

This appeal followed.

II. *Analysis*

On appeal, appellants argue that the circuit court (1) applied the wrong legal standard; (2) incorrectly determined that the membership restrictions were valid; (3) erroneously held that AFF could sell all of its land and abandon its corporate purpose; and (4) mistakenly found that the "inaccurate" letter to the membership did not negate the vote. We affirm.

Following a bench trial, our standard of review asks whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *AgriFund, LLC v. Regions Bank*, 2020 Ark. 246, 602 S.W.3d 726. Disputed facts and determinations of witness credibility are within the province of the trier of fact. *Id.* For questions of law, our review is de novo, and we give the court's conclusions of law no deference in our de novo review. *See Kitchens v. City of Fort Smith*, 2023 Ark. App. 408, 675 S.W.3d 884.

Here, appellants begin by arguing that the circuit court applied the wrong legal standard and required that they demonstrate fraud to prevail in their action. The concept of fraud was apparently interjected into the proceedings when the parties advised the court below that its power to review the actions of voluntary associations was extremely limited and that it should interfere with the business of such associations only in the event of "fraud, lack of jurisdiction, or the invasion of property or pecuniary rights or interests." *Meyer*, 304 Ark. at 722, 805 S.W.2d at 60 (citing *Bruce v. S.C. High Sch. League*, 189 S.E.2d 817, 819 (S.C. 1972)). Appellants argue that the *Meyer* standard is inapplicable and that fraud is not

14

the proper standard to use when determining whether the bylaws conflict with the articles or whether a nonprofit can sell the entirety of its property.

However, even assuming, arguendo, that the circuit court employed the wrong standard, we need not reverse on that basis. Our review on the issues of law regarding the alleged conflict between the articles and the bylaws and the authority of AFF to sell the entirety of its property are questions of law we review de novo, and we can decide those issues based on the facts before us. *See* 8 Fletcher Cyc. Corp. § 4190 Westlaw (database updated Sept. 2025) (Whether a bylaw conflicts with and is repugnant to the charter is a question of law for the court.).

Thus, the first issue we must decide is whether the circuit court erred when it found that the membership restrictions in the bylaws were effective. In deciding this issue, it is important to note that the appellants do not claim that the oral amendments to the bylaws were invalidly adopted throughout the years; rather, they contend that the bylaws, both original and as orally amended, conflict with the articles and are, thus, invalid.

A corporation has no power to exclude persons from membership in violation of its charter or enabling act or to enact bylaws governing the admission or qualification of members that conflict with its articles of incorporation or that are contrary to public policy. *See* 12A Fletcher Cyc. Corp. § 5687. The circuit court here found that the membership rules of AFF supplemented rather than conflicted with its articles of incorporation. The court's finding in this regard is not clearly erroneous.

AFF's articles of incorporation state that AFF was organized to "promote the preservation of the Allen Family Farm and the cabins and buildings thereon and *to provide for membership in said organization* for the various members of the Allen family farm who are direct descendants of James Robert Allen." (Emphasis added.) The articles further provided that the regulation of the internal affairs of AFF were vested in the Board and the bylaws of the corporation. Samuel Allen and Joseph Allen, two of the incorporators in the articles of incorporation, were present at AFF's first meeting where the bylaws limiting membership to those direct descendants of James R. Allen who were twenty-one years of age, applied for membership, and paid $1 in dues plus any levied assessments were promulgated.[5] The third incorporator, Melanie Foster, testified at trial that she agreed with the membership rules as adopted. There is no evidence in the record that there were any challenges to the adoption of the membership rules or its subsequent amendments until the challenge to the vote some forty years later. Moreover, the articles themselves distinguish between members of AFF and members of the Allen family in that they stated that the purpose of AFF was "to provide for the restoration of the old farm, *to be enjoyed by the family and used and preserved by the members of this association*." Considering the record before us, there is evidence to support the court's finding that the membership bylaws supplement rather than conflict with the articles of incorporation, and we are not left with a definite and firm conviction that a mistake was made. Thus, we do not find the court's decision in this regard clearly erroneous.

---

[5]The first meeting was held on October 20, 1984, and the property was deeded to AFF sometime after that first meeting.

Citing, *Dunaway*, *supra*, appellants also argue that the bylaws improperly created two classes of members—one class of members with voting rights and one without—thereby conflicting with the articles of incorporation. In *Dunaway*, we held that there was an apparent conflict between the articles and bylaws of the Garland County Fair and Livestock Association. We noted that the articles were silent on the classes of membership, stating only that membership was open to "all" Garland County residents. The bylaws, however, set forth three classes of membership: (1) "regular members," consisting of twenty-seven elected individuals and the president of the Garland County extension; (2) "honorary members," consisting of individuals selected and approved by a majority of the "regular members"; and (3) "advisors," consisting of individuals selected and approved by a majority of the regular membership and who would have no voting rights. Thus, the bylaws in *Dunaway* did more than just establish a single class of members; they created three separate classes of members, each with distinctive rights. That is not the case here.

As a general rule, we presume bylaws to be valid, and where it is reasonably possible, we will adopt a construction that will sustain rather than overthrow the bylaw. *See* 8 Fletcher Cyc. Corp. § 4184. With that general proposition in mind, we conclude, as did the circuit court, that the bylaws do not create more than one class of members and, therefore, do not conflict with the articles.

In examining AFF's articles and the bylaws, we first note that the articles did not specify that "all" direct descendants of James R. Allen would automatically become members of the organization; instead, it designated a subset of persons (the "various" direct

17

descendants of James R. Allen) who were eligible for membership. The bylaws then "provided for" the membership by establishing the specific eligibility requirements. Harmonizing these two provisions, we find that the articles and the bylaws created only one class of members—those who met the eligibility requirements, and not two as asserted by appellants. Thus, unlike the bylaws in *Dunaway*, there is no conflict with the articles by the establishment of the membership requirements in the bylaws.

Appellants next contend that the amended membership limitations interfered with the vested rights of AFF's members and were thus invalid. Their argument in this regard is premised on their claim that the right to become members "vested" upon the establishment of the original eligibility requirements in 1984. They seemingly contend that the membership requirements were set at that point and could not be changed. Their argument is unpersuasive. They provide no convincing authority for the proposition that the bylaw's membership eligibility requirements cannot be changed despite a separate provision in the bylaws specifically allowing the bylaws to be amended; nor have they provided any compelling authority that a person's contingent right to become a member is a "vested" right. Furthermore, they have not provided any evidence that any existing member in good standing was removed from the membership rolls by virtue of the changes in the eligibility requirements. This court will not consider the merits of an argument if the appellant fails to cite any convincing legal authority in support of that argument and if it is otherwise not apparent without further research that the argument is well taken. *Ouachita Trek & Dev. Co.*

*v. Rowe*, 341 Ark. 456, 17 S.W.3d 491 (2000); *Matthews v. Jefferson Hosp. Ass'n*, 341 Ark. 5, 14 S.W.3d 482 (2000).

We next turn to the court's conclusion that AFF could sell the land and abandon its corporate purpose. Appellants argue that AFF was created for the sole purpose of preserving the family farm and that selling the entirety of the property would constitute an unlawful abandonment of that purpose. Citing *Giss*, *supra*, they further argue that the articles do not give the company the power to sell the entirety of AFF's property. Appellees, on the other hand, argue that Arkansas Code Annotated section 4-28-209 permits the sale of "all or any part" of the corporation's assets and that *Giss* was decided before the 1965 Act. They further argue that a prohibition on the ability of the association to sell the property results in an unconstitutional restraint on alienation.

We need not address either argument, however, because the issue is not ripe for our review. "Ripeness is a jurisdictional requirement, and we lack jurisdiction to consider issues that are not ripe for appellate review." *Ameriprise Fin. Servs., Inc. v. Bettis*, 2026 Ark. App. 256 (citing *Howard v. Jenkins*, 2019 Ark. App. 15, at 6, 568 S.W.3d 771, 776). Here, AFF has thus far voted only to *list* the property for sale. The property has yet to be listed, and no offer to purchase has been accepted by either the Board, its officers, or its members. As such, it is unknown whether the property will be sold either in whole or in part or under what circumstances the property will be sold. Appellants even recognized this uncertainty in its brief when it highlighted all the "unknowns" surrounding the subsequent potential sale of the property. Thus, the issue is not ripe for our review. Moreover, at this juncture and

without knowing the specifics surrounding the ultimate sale of the property, any determination as to the authority of AFF to sell the property at issue would constitute an advisory opinion. This court will not render an advisory opinion. *Centofante v. Ferguson*, 2026 Ark. App. 172, ___ S.W.3d ___.

Finally, appellants argue that the circuit court mistakenly found that the "inaccurate" letter to the membership did not negate the membership's vote. They argue that there are too many "unknowns" surrounding the potential sale of the property for the letter to be accurate and that any vote in favor of such a sale based on the misleading letter should be declared invalid. We disagree.

First, there were two letters sent to the members before the vote. Neither letter spoke in absolutes.

The first letter, which was actually drafted by appellant Muruaga-Atkins, simply explained the process of listing the property for sale and how the potential proceeds could be divided among the members on considering the suggested list price and the number of current active members. It further explained that there was no active offer to purchase the property, that the commission and other closing costs would be subtracted from the sales price, and that the number of vested members could change. It stated that a vote to list the property would empower the directors and officers to negotiate and accept offers on behalf of the membership. The members were also encouraged to ask questions and comment on the proposal.

The second, drafted by Melanie Foster, detailed the history of the farm and why she believed it was time to list the property for sale. She explained that the proposed realtor specialized in rural, farm, and recreational properties and that while his suggested price was ambitious, he was confident in the price given the uniqueness of the property. She then described the approximate amount each current member in good standing could potentially receive at both the list price and a reduced price. This description essentially followed the formula set forth in the letter drafted by appellant Muruaga-Atkins.

As stated above, neither of these letters spoke in absolutes nor did they guarantee that the members would receive any specific amount from a potential sale. Additionally, there was no evidence introduced that any of the members were misled into voting to list the property for sale by the letters or that any of the members would have voted against the proposal had they been made aware of the alleged "inaccuracies." Thus, the appellants failed to prove that the vote was invalid on that basis.

For the foregoing reasons, we affirm the decision of the circuit court.

Affirmed.

WOOD and BROWN, JJ., agree.

*RMP LLP*, by: *Zachary R. Hill* and *Tim Hutchinson*, for appellants.

*Smith, Cohen & Horan, PLC*, by: *Matthew T. Horan*; and *Everett Law Firm*, by: *John C. Everett*, for appellees.